No. 65,038

ADAM MELLIES, *Appellee*, v. ARTHUR MELLIES, *Appellant*.

(815 P.2d 114)

Opinion filed July 12, 1991.

*Dennis A. White*, of Holton, argued the cause, and *Jan M. Hamilton*, of Hamilton, Peterson, Tipton & Keeshan, of Topeka, was with him on the brief for appellant.

*Jeffrey W. Jones,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Gary E. Laughlin*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by Adam Mellies against his father, Arthur Mellies, seeking recovery of social security benefits received as a result of the death of Marsha Mellies, mother of Adam and wife of Arthur. A counterclaim was filed by Arthur seeking damages from a 1986 incident wherein Adam shot his stepmother, stepbrother, and father—the stepbrother having died from his injuries. The district court denied the counterclaim and entered summary judgment for $25,847.80 plus $15,922.22 prejudgment interest against Arthur, who appeals therefrom.

The facts were stipulated to and there is no contention the case was not ripe for summary judgment, both parties having filed summary judgment motions. The stipulated facts are as follows:

"a. Following the death of plaintiff's mother, defendant (plaintiff's father) applied for Social Security children's benefits for plaintiff and at that time agreed to serve as representative payee for plaintiff. Plaintiff was 4 years old at the time of the first benefit payment.

"b. Plaintiff's Social Security benefits during the time defendant was his representative payee were as follows:

| | | |
|---|---|---|
| 9/73 to 2/74 | $ 93.90 per month = | $ 563.40 |
| 3/74 to 5/74 | $100.50 | $ 301.50 |
| 6/74 to 5/75 | $104.20 | $1,250.40 |
| 6/75 to 5/76 | $112.60 | $1,351.20 |
| 6/76 to 5/77 | $119.90 | $1,438.80 |
| 6/77 to 5/78 | $127.00 | $1,524.00 |
| 6/78 to 5/79 | $135.30 | $1,623.60 |
| 6/79 to 5/80 | $148.40 | $1,780.80 |
| 6/80 to 5/81 | $170.10 | $2,041.20 |
| 6/81 to 5/82 | $189.10 | $2,269.20 |
| 6/82 to 11/83 | $203.00 | $3,654.00 |
| 12/83 to 11/84 | $210.00 | $2,520.00 |
| 12/84 to 11/85 | $217.40 | $2,608.80 |
| 12/85 to 11/86 | $224.10 | $2,689.20 |
| 12/86 (December only) | $226.90 | $ 226.90 |

"c. The amounts set out in 'b' above total $25,847.80.

"d. The benefits, or monies derived from the benefits, were deposited in Denison State Bank, beginning 8/11/80 and American Savings Association (now Columbia Savings) beginning at least as early as April, 1979.

"e. Defendant withdrew monies from the joint accounts as follows:

| | |
|---|---|
| 8/17/79 | $ 1,500.00 |
| 5/19/81 | $ 3,000.00 |
| 4/ 2/82 | $12,196.40 |
| 6/21/83 | $ 3,429.99 |
| 3/ 7/86 | $ 448.00 |
| 4/21/86 | $ 220.00 |
| 6/11/86 | $ 400.00 |
| 9/ 2/86 | $ 7,994.88 |
| 12/12/86 | $ 500.00 |
| 1/27/87 | $ 200.00 |
| 2/20/87 | $ 330.52 |
| 9/ 2/86 | $ 400.00 |

"f. Defendant does not know what he did with any money withdrawn prior to June, 1979. Further, he does not know what he did with the withdrawals of 8/17/79, 5/19/81, 3/7/86, 4/21/86, 6/11/86, 9/2/86 ($400.00), and 12/12/86. He states the withdrawals of 4/2/82 and 6/21/83 were transferred to another account. He states the withdrawal of $7,994.88 on 9/2/86 was to pay funeral expenses of Danny Mellies and the withdrawal of $3,429.99 on 6/21/82 was used to pay living expenses.

"g. As plaintiff's father, defendant had a duty to support his minor child pursuant to common law.

"h. Defendant was financially capable to properly support and maintain plaintiff during the years plaintiff lived with him without using plaintiff's Social Security benefits.

"i. The Social Security payments payable to the representative payee (defendant) were the property of and belonged to the child (plaintiff). The purpose of these children's benefits is to provide at least some measure of income and security to those who have lost a wage earner on whom they depended."

Uncontroverted exhibits included, *inter alia*, the application for social security benefits filed by Arthur on behalf of Adam, and documents pertaining to the social security proceedings initiated by Adam to investigate Arthur's expenditures of the social security benefits.

Arthur raises the following issues herein:

1. whether the court abused its discretion in attaching to defendant greater duties than those imposed under the social security regulations and Kansas case law;

2. whether the district court abused its discretion in refusing to bar plaintiff's claims on equitable grounds;

3. whether the district court erred in dismissing defendant's counterclaim; and

4. whether the district court abused its discretion in awarding prejudgment interest to plaintiff.

We believe that the resolution of the first issue is determinative of the entire appeal. The district court's rationale proceeded upon the following lines. Arthur had the obligation to support his son Adam. Adam's social security benefits were not "needed" by Adam unless Arthur's personal funds were insufficient to support Adam. Inasmuch as Arthur stipulated he was financially able at all pertinent times to support Adam, then he had a fiduciary duty to hold and invest all of the social security benefits for Adam. Inherent in the rationale is that the specific dollars received from social security are to be tracked through to the expenditures. Arthur contends that this is an improper interpretation. He had an obligation to support Adam, yes, but there is no requirement that Arthur's private funds must be exhausted before Adam's benefits can be utilized for his support. Further, specific dollars are not to be tracked, but rather total expenditures in meeting Adam's needs are to be considered. If proper expenditures for Adam's needs exceed the benefits received, there is no money

to be conserved. There is no claim herein that Adam's benefits exceeded expenditures for his support. Indeed, such a position would be extremely difficult to maintain.

Arthur's contentions find support in the Social Security Administration's resolution of Adam's complaint against Arthur. In 1988, a social security claims representative and a claims authorizer approved the following report:

"ISSUE:                    Did Adam E Mellies receive the full use of his
                          benefits from 9/73 - 11/86?
"FACTS:                   Adam E Mellies received Social Security benefits
                          on his mother's record. He lived continuously with
                          his father, Arthur E Mellies, until 11/86. Adam re-
                          ceived a minimum Social Security benefit. In 11/86
                          when Arthur Mellies stopped receiving benefits for
                          Adam, his Social Security amount was only $224.00.
                          This is the highest amount that Mr. Mellies ever
                          received. Adam lived continuously with his father.
                          Mr. Mellies fed him, clothed him, put a roof over
                          his head, and paid the utility bills. He also paid
                          medical bills. Arthur Mellies stated he used all the
                          Social Security benefits he received for Adam on
                          Adam's current needs.
"DETERMINATION:           It is determined that all of Adam E Mellies Social
                          Security benefits were used for his needs. The
                          money that Arthur E Mellies had saved was indeed,
                          his money, not Social Security benefits for Adam.
                          Arthur Mellies received such a small amount of
                          money from Social Security there is no way that
                          there could have been conserved funds saved. All
                          money would have been spent on current needs.
                          "It is determined that all Social Security benefits
                          received by Arthur E Mellies for Adam E Mellies
                          was used. There are no conserved funds.
"AUTHORITY:               Section 205(j)(1) of the Social Security Act, Regs.
                          404.202, 410.582, and 416.625."

On March 23, 1988, the following letter was sent to Adam by John J. McDonald, Director, Mid-America Program Service Center for the Social Security Administration:

"We have reviewed the use of your benefits. We find that those benefits were used for your needs. All benefits received by your former payee were spent.

"If you have any questions, you should call, write or visit any Social Security office. If you visit an office, please bring this letter. It will help us answer your questions."

During the period Adam was receiving benefits, 20 C.F.R. § 404.2045 (1986) applied, reproduced in pertinent part as follows:

"(a) *General.* If payments are not needed for the beneficiary's current maintenance or reasonably foreseeable needs or the support of legal dependents, they shall be conserved or invested on behalf of the beneficiary. Conserved funds should be invested in accordance with the rules followed by trustees. Any investment must show clearly that the payee holds the property in trust for the beneficiary."

In 1989, the regulation was amended as follows:

"(a) *General.* After the representative payee has used benefit payments consistent with the guidelines in this subpart (see § 404.2040 regarding use of benefits), any remaining amount shall be conserved or invested on behalf of the beneficiary. Conserved funds should be invested in accordance with the rules followed by trustees. Any investment must show clearly that the payee holds the property in trust for the beneficiary." 20 C.F.R. § 404.2045 (1991).

20 C.F.R. § 404.2040 (1991) provides in pertinent part:

"(a) *Current maintenance.* (1) We will consider that payments we certify to a representative payee have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items."

In *Columbian Fuel Corp. v. Panhandle Eastern Pipe Line Co.*, 176 Kan. 433, Syl. ¶ 2, 271 P.2d 773 (1954), we said:

"The rule that an administrative body's interpretation of its own rules, orders and regulations, in case of ambiguity, is entitled to great weight, under some circumstances to controlling weight, is universally recognized."

Obviously, the trial court's determination that Arthur was required to exhaust his private funds before expending any of Adam's social security benefits for the child's needs is alien to and inconsistent with the interpretation of the Social Security Administration's regulations expressed in the previously cited Social Security Administration's determination of Adam's complaints herein. The Social Security Administration's interpretation of its own regulations is entitled to great weight and, probably, controlling weight.

To hold as the trial court did would place an intolerable burden on a surviving parent. Every expenditure for the family's food,

shelter, transportation needs, etc., would require complex mathematical calculations as to the share thereof attributable to the benefit-receiving child and how much thereof the surviving parent's income could provide. Presumably, adequate records would have to be maintained to withstand any investigation therein 10 or 15 years later.

We have no hesitancy in concluding that the district court's judgment herein was predicated upon a misinterpretation of Arthur's duty of parental support in relation to his role as representative payee of Adam's social security benefits. Arthur had no obligation to exhaust his personal finances in providing for Adam's support before spending any of Adam's social security benefits on the child's maintenance. So long as appropriate expenditures for the child's support exceeded the social security benefits received, there were no funds to be conserved for Adam. There is no claim herein that benefits received exceeded necessary expenditures on Adam's behalf. It is undisputed that Adam lived under Arthur's roof at all pertinent times and that Arthur met all of Adam's financial needs. That ends the controversy. Individual dollars received in benefits need not be tracked through to their expenditure.

By virtue of the result we have reached on the first issue, the other issues raised need not be determined.

The judgment entered herein is reversed and the case is remanded for entry of judgment in favor of the defendant.