249 Kan. 529 (1991)
819 P.2d 1212
In The Interest of D.D.P., Jr., T.P., and B.J.P., Minor Children under Eighteen Years of Age.
No. 66,038
Supreme Court of Kansas.
Opinion filed October 25, 1991.
Mark Works, of Works, Works, & Works, P.A., of Topeka, argued the cause and was on the briefs for appellant maternal grandfather.
Timothy H. Henderson, assistant district attorney, argued the cause, and Gene M. Olander, district attorney, and Robert T. Stephan, attorney general, were with him on the briefs for State of Kansas.
Kenneth M. Carpenter, of Carpenter Chartered, of Topeka, argued the cause and was on the briefs for Court-Appointed Special Advocate.
The opinion of the court was delivered by
McFARLAND, J.:
Petitions seeking to have each of the minor siblings, D.D.P., Jr., T.P., and B.J.P., determined to be a child in need of care were filed by the Shawnee County District Attorney's office on information supplied by the Department of Social and Rehabilitation Services (SRS). Two appeals were filed herein: (1) The State appeals from the court's determination that the court-appointed special advocate (CASA) is an interested party under K.S.A. 1990 Supp. 38-1502(e); and (2) the children's maternal grandfather appeals from a provision in the reintegration plan adopted by the court which provides that he and an adult daughter residing with him (the children's aunt) must undergo psychological testing if the children and their mother are to reside with them.
The facts giving rise to the filing of the petitions and the evidence on which the court determined the children to be in need of care are not before us in these appeals. Physical abuse of the children perpetrated by an individual other than the maternal grandfather and the aunt who resides with him was the cause of the proceedings being filed herein. Other facts will be stated as necessary for the determination of the particular issues raised.
We shall first consider the issues arising in the State's appeal.
On June 25, 1990, the court held that K.S.A. 38-1505a and Supreme Court Rule 110 (1990 Kan. Ct. R. Annot. 98) grant interested party status to a CASA under K.S.A. 1990 Supp. 38-1502(e), although a CASA is not within the purview of K.S.A. *531 38-1541. The State contends this was an erroneous interpretation of our rule and the statutes.
In order to put this issue in context, it is helpful to review the procedural framework of child in need of care cases.
Investigation of alleged child abuse or neglect is the responsibility of SRS and law enforcement officers. K.S.A. 38-1521, K.S.A. 1990 Supp. 38-1522, K.S.A. 1990 Supp. 38-1523. The next stage is covered by K.S.A. 38-1529, which provides:
"(a) Whenever the state department of social and rehabilitation services or any other person refers a case to the county or district attorney for the purpose of filing a petition alleging that a child is a child in need of care, the county or district attorney shall review the facts and recommendations of the department and any other evidence available and make a determination whether or not the circumstances warrant the filing of the petition.
"(b) Any individual may file a petition alleging a child is a child in need of care and the individual may be represented by the individual's own attorney in the presentation of the case."
The contents of the petition are to be in conformity with K.S.A. 38-1531.
The child is represented by a guardian ad litem whose appointment is controlled by K.S.A. 38-1505(a), (d), and (e), which provide:
"(a) Appointment of guardian ad litem; duties. Upon the filing of a petition the court shall appoint a person who is an attorney to serve as guardian ad litem for a child who is the subject of proceedings under this code. The guardian ad litem shall make an independent investigation of the facts upon which the petition is based and shall appear for and represent the child.
....
"(d) Continuation of representation. A guardian ad litem appointed for a child or an attorney appointed for a parent or custodian shall continue to represent the client at all subsequent hearings in proceedings under this code, including any appellate proceedings, unless relieved by the court upon a showing of good cause or upon transfer of venue.
"(e) Fees for counsel. A guardian ad litem or attorney appointed for parties to proceedings under this section shall be allowed a reasonable fee for their services, which may be assessed as an expense in the proceedings as provided in K.S.A. 38-1511 and amendments thereto."
Sections (b) and (c) deal with appointment of counsel for a parent or custodian. Appointment of counsel is mandatory for a parent who is a minor, a mentally ill person, or a disabled person, and for an indigent parent who requests an attorney.
*532 K.S.A. 38-1532 through -1536 set forth the service of process requirements.
Who are the parties to the proceedings? K.S.A. 1990 Supp. 38-1502(e) provides:
"(e) `Interested party' means the state, the petitioner, the child, any parent and any person found to be an interested party pursuant to K.S.A. 38-1541 and amendments thereto."
Those specifically listed in the statute are mandatory parties with a statutory right to participate. In addition, the court may find anyone within the provisions of K.S.A. 38-1541 is an interested party. These are optional "interested parties" without a right to participate unless so designated by the court under K.S.A. 38-1541, which provides:
"Upon motion of any person with whom the child has been residing or who is within the fourth degree of relationship to the child and who desires to have standing to participate in the proceedings regarding the child, the court may order that the person may participate in the proceedings. Upon the filing of the motion, the court may send to the department of social and rehabilitation services a copy of the motion. Upon its receipt, the department shall make an investigation of the advisability of the matter and report its findings and recommendations to the court. In determining whether to enter the order, the court shall take into consideration the length of time the child has resided with the person, the nature of the custody, the relationship between the child and the person and the degree to which the person has been standing in the place of or assumed the obligations of the child's parent. The status as an interested party granted pursuant to this section may be terminated at any time by order of the court."
Note that "interested party" status under K.S.A. 38-1541 is also subject to withdrawal by the court. Note, also, that a guardian ad litem is not an interested party in his or her own right  rather, he or she represents the child who is a mandatory interested party.
Let us examine the possible participants in such proceedings. We have the nonprofessional  the child, the parents, the petitioner (if an individual rather than the State), and individuals designated by the court under K.S.A. 38-1541. By the express language of the statute, the optional interested party pool is limited to close relatives and individuals with whom the child has been residing. The child aside, each member of the nonprofessional participants has his or her own personal interests at stake. *533 Their contact with the child antedates the court proceedings, and their interests may be quite different from those of the child. Any or all may turn out to be part of the problem giving rise to the filing of the petition.
Let us look at the professionals involved. In this group, we have the guardian ad litem appointed to represent the child, the State (commonly county or district attorney), attorneys for parents or other "interested parties," and the trial judge. Additionally, although not parties, SRS case workers will be participating. The professionals are typically involved with many cases.
The nonprofessional frequently have their own axes to grind, and the professionals are stretched thin in the time they can devote to any particular case. Further, attorneys for individuals are representing their clients only. It is not surprising that horror stories began to surface of children being lost in the system and spending their childhood being shunted from foster home to foster home when a prompt concerted effort could have resulted in their return to a parent or parents. Even if return to a parents' home is not a realistic possibility and some other arrangement is necessary, prompt action in achieving a true permanent home for the child is highly desirable. This is not to criticize the many dedicated professionals working in this area, but it is simply the old story of too many cases and too little time to devote to any particular case.
In one form or another, local programs began to surface which involved a new element being brought into the picture. This new element was a trained volunteer nonprofessional who entered the case to aid the child and the court. This fresh face had no previous contact with the child or his or her relatives and, hence, no preconceived personal position to defend and had the time and concern to work closely with the professionals and nonprofessional involved in finding the best disposition for the child.
The 1985 legislature enacted K.S.A. 38-1505a, which provides:
"Appointment of special advocate. (a) In addition to the guardian ad litem appointed pursuant to K.S.A. 38-1505 and amendments thereto, the court at any state of a proceeding pursuant to this code may appoint a volunteer special advocate for the child who shall serve until discharged by the court and whose primary duties shall be to advocate the best interests of the child and assist the child in obtaining a permanent, safe and homelike placement. *534 The court-appointed special advocate shall have such qualifications and perform such specific duties and responsibilities as prescribed by rule of the supreme court.
"(b) Any person participating in a judicial proceeding as a court-appointed special advocate shall be presumed prima facie to be acting in good faith and in so doing shall be immune from any civil liability that otherwise might be incurred or imposed.
"(c) On or before January 1, 1986, the supreme court shall promulgate rules governing court-appointed special advocate programs in the district courts.
"(d) This section shall be a part of and supplemental to the Kansas code for care of children."
K.S.A. 1985 Supp. 38-1502 was amended in 1986 to add the following definition:
"(q) `Court-appointed special advocate' means a responsible adult other than an attorney guardian ad litem who is appointed by the court to represent the best interests of a child, as provided in K.S.A. 38-1505a and amendments thereto, in a proceeding pursuant to this code." L. 1986, ch. 158, § 2.
The 1985 legislature thus authorized the development of a CASA program but turned the matter of how the program would operate to the Kansas Supreme Court. This court, after full review of the matter, adopted Supreme Court Rule 110 (1990 Kan. Ct. R. Annot. 98 [effective January 1, 1986]), which provides:
"CASA VOLUNTEER PROGRAMS
"Court-appointed special advocate (CASA) volunteer programs shall embrace the following:
(a) It shall be the primary duty of a court-appointed special advocate to personally investigate and become acquainted with the facts, conditions, and circumstances affecting the welfare of the child for whom appointed, to advocate the best interests of the child and assist the court in obtaining for the child the most permanent, safe, and homelike placement possible. A CASA volunteer, additionally, should:
(1) Visit the child as often as necessary to monitor the child's safety and observe whether the child's essential needs are being met;
(2) Attend court hearings pertaining to the child or, if not excused by the judge, arrange for attendance of a qualified substitute approved by the judge;
(3) Participate in staffings and, to the extent possible, other meetings pertaining to the child's welfare;
(4) Participate in the development of the written plan for reintegration and/or modification of a plan already in place;
(5) Submit a written report to the court prior to each regularly scheduled court hearing involving the child; and

*535 (6) Do all such other things on behalf of the child as are directed by the program director and the standards relating to CASA volunteer programs.
(b) A CASA volunteer shall:
(1) Be at least 18 years of age;
(2) Submit a completed written application to the local program; and
(3) Successfully complete screening procedures and a review by local program staff.
(c) Standards relating to CASA volunteer programs shall be promulgated by the Judicial Administrator and followed by CASA volunteer programs. The standards shall include requirements pertaining to certification of local CASA volunteer programs by the Judicial Administrator and certification and training of CASA volunteers by the local program.
(d) District courts utilizing privately administered CASA programs shall have a written agreement with the person or group sponsoring the program. The written agreement shall be in force for not longer than two years from the effective date of the agreement. The agreement shall govern operation of the privately administered CASA program and shall:
(1) Require the program to meet the standards relating to CASA volunteer programs promulgated by the Judicial Administrator;
(2) Set forth the responsibilities of the court to the CASA program and of the CASA program to the court including a requirement that CASA volunteers be certified by the local program;
(3) Specify the procedures for assignment of the program to cases and for the removal of the program from cases;
(4) Establish procedures for resolution of grievances and conflicts for both CASA programs and individual CASA volunteers; and
(5) Set forth the requirements the program must meet to be eligible for renewal of the agreement upon expiration.
(e) District courts shall promulgate local court rules governing operation of CASA programs which are administered by the court. The rules shall include the items specified in (1) through (4) of the preceding paragraph.
(f) A CASA volunteer shall be given notice of all court hearings involving the child and shall have access to any district court records within the state pertaining to the child for whom appointed.
(g) The district court or the privately administered CASA program, as applicable, shall provide such statistical and other information about its CASA program as the Judicial Administrator may require."
At the present time, approximately one-third of Kansas counties have CASA programs.
With this background in mind, we turn to the particular issues involved in the State's appeal. The trial court found that the optional interested party statute, K.S.A. 38-1541, was not broad *536 enough to include a CASA. With this determination, we agree. However, the district court further concluded that the enactment of the CASA statute (K.S.A. 38-1505a) and our adoption of Rule 110 granted interested party status to a CASA under K.S.A. 1990 Supp. 38-1502(e). This determination turns the advocate into a litigant who may be represented by counsel, file motions, and appeal the trial court's orders. K.S.A. 38-1591(a) provides:
"An appeal may be taken by any interested party from any adjudication, disposition, termination of parental rights or order of temporary custody in any proceedings pursuant to this code."
We believe that the trial court's interpretation would basically alter the role of a CASA as envisioned by the 1985 legislature and by this court when it adopted Rule 110.
CASA argues that legislative intent that a CASA participate in court hearings is shown by K.S.A. 38-1505a(b), iterated for convenience as follows:
"(b) Any person participating in a judicial proceeding as a court-appointed special advocate shall be presumed prima facie to be acting in good faith and in so doing shall be immune from any civil liability that otherwise might be incurred or imposed."
To interpret "participating in a judicial proceeding" in that statute to refer specifically to court appearances would remove a CASA's protection from those areas of involvement having the greatest potential liability  his or her direct contacts with the child and his or her family, and others involved with the family. We find nothing in K.S.A. 38-1505a evincing a legislative intent that a CASA be an interested party under K.S.A. 1990 Supp. 38-1502(e).
The issue then comes down to whether or not the district court was correct in holding that our adoption of Rule 110 afforded interested party status to a CASA under K.S.A. 1990 Supp. 38-1502(e). Inasmuch as our rule makes no reference to interested party status, such determination becomes a matter of interpretation and intent. We are frequently called upon to interpret statutes and determine the legislative intent in enacting same. Likewise, we frequently interpret agency rules and determine the agency's intent when adopting same. The rule that an administrative body's interpretation of its own rules, orders, and *537 regulations, in case of ambiguity, is entitled to great weight, under some circumstances to controlling weight, is universally recognized. Mellies v. Mellies, 249 Kan. 28, Syl. ¶ 1, 815 P.2d 114 (1991).
In the matter now before us, we are in an interesting situation involving the interpretation of one of our own rules.
The district court held that by requiring attendance of the CASA at all court hearings, the court has made the CASA an interested party (subsection [a][2] of Rule 110). We do not so interpret that subsection. Looking at (a)(3) and (4) we note participation is required at staffings and preparation of the reintegration report. Only attendance is required at court hearings. If the CASA is to participate as a party at court hearings, then there is no need for the requirement in (a)(5) that the CASA send a written report to the court in advance of each court hearing. The attendance and written report requirements are much more consistent with the concept the CASA is to be present to observe the proceedings and to answer any questions arising from the written report. Likewise, the CASA's views could be sought on any proposals made during, or material arising from, the hearing.
From the role of advocate for the child, and advisor to the court, the CASA would become a litigant in what is basically an adversarial system. It would be rather ridiculous for a CASA attorney to file a motion to remove a guardian ad litem and file a brief in support thereof, while his client, the CASA, is preparing the required written report to be filed prior to the hearing on the CASA's motion. Presumably, the CASA's report would be prepared by or at least approved by the CASA counsel and would be Exhibit A filed in support of the motion. The whole concept of filing a written report with the judge prior to a hearing is inconsistent with, and alien to, party litigant status. If one is a party litigant, there is no reason for written reports relative to what has transpired among the various parties and agencies since the last hearing. Litigants file memorandums and briefs  they do not file ex parte reports with the judge on how other litigants and involved agency personnel have been performing their respective roles. The value of the written report is that of an aid to the court in evaluating what has transpired, keeping the case moving, and in arriving at a proper disposition or modifying a *538 prior order. Additionally, if the CASA has counsel, then his or her relationship with the child and family members, SRS, the State, and the guardian ad litem would be governed and influenced by advice of his or her counsel, and the basic concept of the one-on-one volunteer nonprofessional assisting the court and advocating the child's best interests would be substantially altered.
The guardian ad litem is the child's legal representative in the proceeding. The CASA is not intended to be another cook in the kitchen. The guardian ad litem is an attorney legally qualified and licensed to represent another person in court. The CASA is an advocate for the child but is not legally qualified or licensed to represent another person in court. If the CASA cannot represent anyone in court, then he or she must have independent standing to represent himself or herself and any attorney he or she retains is representing the CASA. Such attorney cannot slide through his or her client and claim to be representing the child vicariously.
This brings us to the odd position of determining our own intent in adopting the rule in question. Did we intend for a CASA to be an interested party as defined by K.S.A. 1990 Supp. 38-1502(e)? The answer is "no."
Under our concept of the CASA program, the CASA role is that of serving as an aide to the court in making an appropriate resolution of the proceedings. He or she has access to the files and parties, meets with same, has input into the development of reintegration plans and temporary placements, and advises the court on his or her views as to what is best for the child. The inherent nature of child in need of care proceedings involves family situations where needs and problems may change from day to day or week to week. The written reports keep the court advised as to what has been or has not been happening among the various litigants. The CASA is informed and available to the court when additional information or his or her views are sought.
We believe that interested party status would substantially alter the role we intend the CASA to play in the proceedings.
There are also financial problems inherent in making a CASA an interested party. Legal counsel may be desired by a CASA at the district court level and necessary in an appeal. There is *539 no statutory authority for appointment of, or payment of, a CASA attorney by court order. In addition to liability for payment of his or her own attorney, a CASA, if an interested party, has potential liability for payment of the guardian ad litem fees and expenses as well as fees and attorney fees for any other attorneys appointed in the case to represent parents. K.S.A. 38-1511 authorizes guardian ad litem fees and expenses as well as those of other appointed counsel to be ordered paid by "an interested party" (except the State). K.S.A. 38-1593 provides that fees and expenses of a guardian ad litem and attorneys appointed to represent parents incurred in an appeal may be assessed against an interested party (except the State). Having interested party status could prove to be very expensive for a CASA who has volunteered his or her services to aid a child. This court did not intend to subject a CASA to such a possibility in enacting Rule 110, nor do we believe the legislature so intended in enacting K.S.A. 38-1505a. Yet, if a CASA is an "interested party," he or she is an interested party for all purposes.
It is apparent that there were many personality clashes and problems among the cast in this case. The present CASA is the second one assigned to this case, and the present guardian ad litem is the third attorney so assigned. The grandfather filed a motion to have the present CASA removed, and the State, the guardian ad litem, and the grandfather joined in a motion to have the trial judge removed. These are all indications that there were a lot of "troubles in River City" although we do not have any particulars in that regard. The CASA was being actively represented by counsel throughout much of the time the case was being litigated at the trial court level.
The precipitating factor leading to the district court's determination that the CASA had interested party status was the submission to it by SRS of a reintegration plan in whose preparation the CASA had not participated (contrary to Supreme Court Rule 110[a][4].) The trial court properly refused to consider the plan and sent it back to SRS for development of a plan with CASA participation. This is as far as it needed to go to be presented with a plan with CASA participation. If the trial court was unhappy with the legal representation being afforded the child by the guardian ad litem, the solution was to replace the guardian *540 ad litem  not to create a sort of dual legal representation for the child, the second one being a non-attorney who was represented by counsel.
We conclude that under the present CASA program for which we have promulgated rules, a CASA does not have interested party status under K.S.A. 1990 Supp. 38-1502(e). If the legislature determines such status is to be afforded a CASA, it must confer such status by appropriate legislative enactment. Therefore, the district court erred in determining that the CASA had interested party status.
We turn to the issue raised in the appeal of the maternal grandfather herein. The State challenges the grandfather's standing to bring the appeal, and these points shall be considered first.
The State's first challenge to standing is the claim that the grandfather has failed to exhaust his administrative remedies. SRS developed the plan that has the complained-of conditional provision requiring psychological testing of the grandfather and the aunt. The district court ordered the preparation of the plan under authority of K.S.A. 1990 Supp. 38-1565, which provides:
"(a) If a child is placed outside the child's home and no plan is made a part of the record of the dispositional hearing, a written plan shall be prepared which provides for reintegration of the child into the child's family or, if reintegration is not a viable alternative, for other placement of the child. If the goal is reintegration into the family, the plan shall include measurable objectives and time schedules for reintegration. The plan shall be submitted to the court not later than 60 days after the dispositional order is entered. If the child is placed in the custody of the secretary, the plan shall be prepared and submitted by the secretary. If the child is placed in the custody of a facility or person other than the secretary, the plan shall be prepared and submitted by a court services officer.
"(b) A court services officer or, if the child is in the secretary's custody, the secretary shall submit to the court, at least every six months, a written report of the progress being made toward the goals of the plan submitted pursuant to subsection (a). If the child is placed in foster care, the foster parent or parents shall submit to the court, at least every six months, a report in regard to the child's adjustment, progress and condition. The department of social and rehabilitation services shall notify the foster parent or parents of the foster parent's or parent's duty to submit such report, on a form provided by the department of social and rehabilitation services, at least two weeks prior to the date when the report is due, and the name of the judge and the address of the court to which the report is to be *541 submitted. Such report shall be confidential and shall only be reviewed by the court and the child's guardian ad litem. The court shall review the progress being made toward the goals of the plan and the foster parent report and, if the court determines that progress is inadequate or that the goals are no longer viable, the court shall hold a hearing pursuant to subsection (c). If the secretary has custody of the child, such hearing shall be held no more than 18 months after the child is placed outside the child's home and at least every 12 months thereafter. If the goal of the plan submitted pursuant to subsection (a) is reintegration into the family and the court determines after 18 months from the time such plan is first submitted that progress is inadequate, the court shall hold a hearing pursuant to subsection (c) to determine whether proceedings shall be commenced pursuant to this code to terminate the parental rights of either or both parents. Nothing in this subsection shall be interpreted to prohibit termination of parental rights prior to the expiration of 18 months.
"(c) Whenever a hearing is required under subsection (b), the court shall notify all interested parties and hold a hearing regarding the adequacy of the plan submitted pursuant to subsection (a), progress toward the goals of such plan and the viability of such goals. If, after hearing, the court determines that the child's needs are not adequately being met, the plan is inadequate or the goals are not viable, the court may rescind any of its prior dispositional orders and enter any dispositional order authorized by this code, may order commencement of proceedings pursuant to this code to terminate the parental rights of either or both parents or may order that a new plan for the reintegration, or an alternative plan for the child's placement, be prepared and submitted to the court."
The State contends that inasmuch as SRS prepared the plan, any challenge thereto must initially be by the administrative appeal process available for SRS decisions. This contention totally ignores the fact that while the plan is prepared by SRS, it is prepared for submission to the court which has control thereover. If approved, the plan becomes the court's plan and order. The court is not required to accept it or, having accepted it, is not required to continue with it. Therefore, any challenge to, or appeals arising from, the plan must lie in the district court and the appellate courts.
The balance of the State's arguments on the grandfather's standing are that the grandfather is attempting to raise certain specific issues for the first time on appeal. Whether the grandfather has standing to raise these issues will be discussed in connection with each issue.
There is, however, one troublesome area which this court feels it must raise sua sponte. The grandfather was represented by *542 counsel throughout most of the proceedings in the district court. He and his counsel actively participated in the proceedings. Absent from the record before us, however, is any order designating the grandfather an "interested party" under K.S.A. 38-1541. If the grandfather has standing to appeal under K.S.A. 38-1591, then he must have been designated an "interested party."
This area was discussed in some depth in the prior issue. The same attorney for the State prepared the appellant's brief in its appeal and an appellee's brief in the grandfather's appeal. It is inconceivable that had no such order been entered, the State's attorney would have ignored this powerful challenge to the grandfather's standing and pushed the weak argument of failure to exhaust administrative remedies. The various journal entries filed in the case indicate that the grandfather was accepted and operated as though he had been afforded interested party status. Under the circumstances herein, we will assume the grandfather had been designated by the district court an interested party pursuant to K.S.A. 38-1541.
At this point, we need to discuss the plan involved herein. The reintegration plan was prepared by SRS. The format is that of an agreement between the SRS workers and the children's natural mother. The portion of the agreement under challenge herein is paragraph 6 of the mother's responsibilities thereunder, which are as follows:
"INDIVIDUAL RESPONSIBILITIES:
"I [Mother], will:
1. Work in a cooperative manner with SRS, as well as respective workers, such as the Court Appointed Special Advocate and foster families, involved in the case. This will include proper notification to SRS if unable to keep appointments. Notification, except for emergencies shall be 24 hours prior to appointment.
"2. Continue to receive individual therapy on a weekly basis to deal with problems arising with the children and the reported pregnancy.
"3. Agree to have family therapy with [B.J.] and [D.] with the children's therapist at least twice a month. I agree to arrange therapy and will pay for it to show that I am financially responsible to care for my children. If necessary, I will apply for a medical card.
"4. Agree to have a parenting assessment at the end of six months with written results to SRS prior to 3/1/91. The results need to be favorable, demonstrating I can parent.

*543 "5. Agree to have my home viewed by SRS and/or CASA. This will be done by home visits, scheduled and unscheduled.
"6. Agree to have psychological testing done on anyone living in the home with me. The results must show that the persons I live with will not harm my children emotionally or physically and will show that they are stable enough to have children living with them. If the parties in the home refuse to have psychological testing done, I will seek separate housing and will give SRS verification of how I will maintain a home that is safe and stable.
"7. Not have contact with known child abusers or people who have brought harm to my children in the past. This will be monitored by SRS visits and reports from respective parties involved in the case.
"8. Obey all court orders, such as being present for the visits, notifying SRS of changes of address or employment, and getting the court's permission to take the children out of state or county.
"9. Meet with the family support worker once a week to help monitor my abilities to budget and prepare menus for my children. The support worker will check out menus of meals I prepare to see if they are balanced, and will monitor who is in residence there, as well as discussing and working on any problems with the children for extra support.
"10. Agree to visitation as follows: A) I will be present at visits. This will be for me to provide supervision. The children, if left with a babysitter, will not be left with anyone under the age of 18 to ensure safety and also due to the special needs of these children. B) For monitoring purposes and due to the stress factors of a new baby, agree to visits every other weekend from 7am Friday to 4pm Sunday. I will pick the children up since I am presently unemployed. C) Return the children clean from their visits as the foster parents report the children are dirty when returned from visits. D) Agree to random monitoring of visits by SRS.
"11. Agree to start showing financial responsibility by providing the children with clothes for school, thus alleviating my dependency upon the system.
"12. Abide by St. Joseph's home and their rules. This will entail keeping phone contact and abiding by the recommendations of the home."
Space is provided at the end of the plan for the grandfather and the aunt to agree to submit to psychological testing. The plan was accepted by the trial court over the objections of the grandfather. Neither the plan nor the district court require or order the appellant grandfather to submit to psychological testing. The mother is agreeing that the testing will be done on anyone with whom she and the children reside. Thus, if the grandfather *544 or the aunt refuse to be tested, the mother and children are precluded from residing in a home with such persons. The children were in foster care at the time of the preparation and entry of the plan. The plan was a proposal for reuniting the children with their mother.
It is the grandfather's position that it is unreasonable to have the provision that the mother and the children cannot accept residence in his home without himself and the aunt having submitted to and "passed" psychological testing when neither had any role in the prior abuse of the children.
On appeal, the grandfather couches his objection in terms of an attack on K.S.A. 1990 Supp. 38-1565. He contends the statute is constitutionally impermissible as:
1. being vague and overbroad;
2. an invasion of his right to privacy;
3. a denial of his right to equal protection; and
4. a denial of his right to due process.
The State counters that:
1. The grandfather is precluded from raising any of these issues because each is asserted for the first time on appeal;
2. the grandfather makes factual allegations not contained in the record; and
3. there is no merit to any of these contentions.
The CASA has filed a brief herein which argues that each of the grandfather's issues lacks merit. Inasmuch as we have previously held that the CASA is not an interested party, she lacks standing as a party to file an appellee's brief in the grandfather's appeal. However, under the circumstances, the brief will be considered as one filed by an amicus curiae.
An immediate problem arises in considering the grandfather's contentions. His format is structurally flawed. He attempts to gain relief from the complained-of plan's paragraph 6 by attacking K.S.A. 1990 Supp. 38-1565 on constitutional grounds. Yet, the statute just governs the preparation, submission, and review of the operation of the plan. It does not even purport to set forth what may be included in the plan. The reason for the omission is obvious. The plan is intended to meet the needs of an abused or neglected child. No laundry list of conditions and requirements could be devised that would cover every situation in every case. *545 The conditions and terms must be tailor made to fit the particular circumstances involved.
The grandfather's arguments in district court are reflected in his objection to and motion to modify, which states the following as the grounds for his dissatisfaction with the plan:
"1. SRS has not viewed the [grandfather's] home or met with [the grandfather] or the extended family.
"2. It is per se unreasonable to request psychiatric evaluations of the extended family and [the grandfather].
"3. That [the grandfather] has undergone a home study in 1986 and was found fit. See attached Exhibit 1.
"4. That the concern and care that the [mother's family] and [the mother have] shown should preclude a psychiatric evaluation.
"5. That the evaluation is unwarranted.
"WHEREFORE, the natural mother and grandfather requests this motion be sustained in its entirety, or other such relief as the court deems just, equitable and proper."
After the plan was approved, the grandfather filed a motion to reconsider, grounded as follows:
"1. The testing is unduly burdensome.
"2. No party has suggested the need for such tests.
"3. No prior allegation of mental illness have been made against [the grandfather] or [the aunt]."
We find no place in the record where the grandfather ever contended in the district court that K.S.A. 1990 Supp. 38-1565 was constitutionally defective or that the district court lacked authority to approve the provision in question 6. The thrust of his contentions before the district court were simply that it was unnecessary and unreasonable to have the psychological testing provision under the facts of this case.
We have long held that where constitutional grounds for reversal are raised for the first time on appeal, they are not properly before the appellate court for review. In re Residency Application of Bybee, 236 Kan. 443, 449, 691 P.2d 37 (1984); Malone v. University of Kansas Medical Center, 220 Kan. 371, 552 P.2d 885 (1976); Missionary Baptist Convention v. Wimberly Chapel Baptist Church, 170 Kan. 684, 688, 228 P.2d 540 (1951); Lamb v. Butler County, 108 Kan. 739, 740-41, 196 Pac. 1059 (1921).
We must conclude none of the constitutional issues raised by the grandfather are properly before us.
*546 Although we have found that couching the appeal herein in terms of a constitutional attack on K.S.A. 1990 Supp. 38-1565 was improper, we believe that abuse of trial court discretion in approving the plan has been adequately alleged on appeal, and, therefore, that issue will be considered.
We have discussed abuse of judicial discretion issues on many occasions.
Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. All judicial discretion must thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds. Stayton v. Stayton, 211 Kan. 560, 562, 506 P.2d 1172 (1973). See Leeper v. Schroer, Rice, Bryan & Lykins, P.A., 241 Kan. 241, 248, 736 P.2d 882 (1987); In re Marriage of Wessling, 12 Kan. App.2d 428, 432, 747 P.2d 187 (1987).
The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision. Hoffman v. Haug, 242 Kan. 867, 873, 752 P.2d 124 (1988). See State v. Massey, 242 Kan. 252, 264, 747 P.2d 802 (1987); DeWerff v. Schartz, 12 Kan. App.2d 553, 557, 751 P.2d 1047 (1988).
One who asserts an abuse of discretion bears the burden of showing such abuse. DeWerff v. Schartz, 12 Kan. App.2d at 557. See Hagedorn v. Stormont-Vail Regional Med. Center, 238 Kan. 691, 695, 715 P.2d 2 (1986); Hoover Equipment Co. v. Smith, 198 Kan. 127, 134, 422 P.2d 914 (1967); Byington v. Comm'rs of Saline Co., 37 Kan. 654, 657, 16 Pac. 105 (1887).
The grandfather's principal argument may be summarized as follows: He is a responsible, stable, reputable, and caring adult with a sincere interest in the well-being of his grandchildren. Further, there is nothing in the record that indicates either he or the children's aunt ever did any harm to the children or have, in any way, demonstrated they suffer from psychological problems. *547 Under these circumstances, the grandfather argues the psychological testing provision is unreasonable.
From the grandfather's arguments in this regard, it appears that he considers, as many other people would under like circumstances, the idea of being psychologically tested a personal affront and an indication that he is suspected of having psychological problems. Although the grandfather's position is understandable, it is not persuasive.
The plan was developed and approved to reintegrate these children with their mother into a workable and satisfactory family unit. From the sketchy record before us, it would appear the children were physically abused by one or more of the adults with whom they had previously resided. We have nothing before us on the children's mental health, or needs, or what their mother has to offer them or herself. The totality of the situation was known by the participants in the preparation of the plan and by the trial court. The requirement for psychological testing may have arisen from a proper abundance of caution and concern that these children be in the type of home environment that would prevent further psychological or physical harm and repair existing psychological scars. There is no requirement that psychological problems in the grandfather or the aunt be proven before testing can be required as a condition for permitting the children to reside in the same home with them. Had such problems been established or even suspected, presumably, the plan would not have included such a proposed living arrangement.
We conclude that the grandfather has failed to establish any abuse of trial court discretion in approving the challenged paragraph 6 of the plan.
The judgment of the district court is affirmed in part and reversed in part.
LOCKETT, J., not participating.