Kathy Sue JAHNKE, Appellant,

v.

Jeffrey George JAHNKE, Appellee.

In the Matter of the ADOPTION OF Robert Wayne TRISLER,

Jeffrey G. Jahnke, Petitioner.

No. 94–475.

Supreme Court of Iowa.

Dec. 21, 1994.

Kolleen K. Samek, Des Moines, for appellant.

No appearance by appellee and guardian ad litem.

Considered by HARRIS, P.J., and LARSON, LAVORATO, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

We are asked to decide two issues in this case. First, did the district court have the power to vacate an adoption decree after the death of the adoptive parent? We conclude it did not.

Second, should the social security benefits paid to the parents on behalf of their child be placed in trust and used to pay court costs and attorney fees incurred by the parents? Although we think under the circumstances of this case that the social security benefits already received by the child should be placed in trust until the child reaches majori-

ty, we do not believe these funds should be used to pay the parents' expenses of litigation.

Because the child's need of future benefits for current support was not fully developed in the record, we remand for a determination of the amount of future benefits to be deposited in the trust account. Therefore, we affirm in part, reverse in part, and remand.

## I. *Factual and Procedural Background.*

Appellant, Kathy Jahnke, and appellee, Jeffrey Jahnke, were married in 1991. A few weeks after their marriage Jeffrey adopted Kathy's son, Robert. At that time, Jeffrey was receiving disability payments from the Social Security Administration. As Jeffrey's son, Robert received dependent social security disability benefits.

In early 1993, the Jahnkes' marriage was dissolved. Later that year, Jeffrey requested that his adoption of Robert be vacated based on fraud.

Before the court could rule on Jeffrey's request, he died in January of 1994. Not aware that Jeffrey had died, the district court entered an order vacating Jeffrey's adoption of Robert in February 1994.

In the same order the court modified the 1993 dissolution decree. The court required that all social security benefits received in the past or future on Robert's behalf be placed in a trust account. The court also ordered that the attorney fees and court costs incurred by Jeffrey and Kathy as well as the fees owed to the attorney appointed to represent Robert be paid from this account.

In this appeal, Kathy argues that the court could not vacate the adoption of Robert after Jeffrey's death. She also contends that the court had no authority to direct that Robert's federal social security benefits be held in trust or that these benefits be used to pay her and Jeffrey's legal fees and court costs.

## II. *Abatement of Action to Vacate Adoption.*

An adoption establishes the personal, yet legal, relationship of parent and child between persons not so related by nature. Iowa Code § 600.13(4) (1993); 2 Am.Jur.2d *Adoption* § 1 (2d ed. 1994). In recognition of the personal nature of an adoption proceeding, courts have held that the death of the prospective adoptive parent or of the child to be adopted abates the adoption action. *E.g., Venables v. Ayres*, 54 Md.App. 520, 459 A.2d 601, 603 (1983); *In re Estate of Freud*, 69 Misc.2d 906, 331 N.Y.S.2d 224, 227–28 (Sur.Ct.1972); *Johnson v. Wilbourn*, 781 S.W.2d 857, 862 (Tenn.Ct.App.1989); *accord* 1 C.J.S. *Abatement & Revival* § 154, at 211 (1985); *see In re Adoption of Bradfield*, 97 N.M. 611, 642 P.2d 214, 217 (App.1982) (death of child to be adopted deprives court of jurisdiction to grant adoption).

We have never considered the consequences of the death of a prospective adoptive parent or the adoptee on a proceeding to adopt or a proceeding to vacate an adoption.[1] However, we have observed that the death of a party to a dissolution of marriage action abates the dissolution proceeding. *In re Estate of Peck*, 497 N.W.2d 889, 890–91 (Iowa 1993); *Oliver v. Oliver*, 216 Iowa 57, 58, 248 N.W. 233, 234 (1933). That is because death ends the marital relationship. *Oliver*, 216 Iowa at 58, 248 N.W. at 234. The parties' rights are determined on the basis of the relationship as it existed at the time one of the parties died. *In re Estate of Peck*, 497 N.W.2d at 891.

We think the same logic applies to this proceeding to vacate Robert's adoption. The purpose of the proceeding was similar to that of a dissolution action—to terminate the parent-child relationship between Jeffrey and Robert. However, Robert's status as Jeffrey's son still existed at the time of Jeffrey's death. We believe that thereafter the court did not have the power to retroactively sever the parent-child relationship because Jeffrey's death abated the proceeding.

---

1. Whether the death of the prospective adoptive parent or the adoptee abates an action to vacate an adoption is a legal issue. Therefore, we are not bound by the trial court's determination of this issue. *Power Eng'g & Mfg., Ltd. v. Krug Int'l*, 501 N.W.2d 490, 493 (Iowa 1993). Our review is for errors of law. *Dennis v. Christianson*, 482 N.W.2d 448, 450 (Iowa 1992).

We have not overlooked that Iowa has adopted a survival statute that provides that all causes of action survive the death of the person entitled to the action. Iowa Code § 611.20 (1993). However, we have held that a similar statute providing for the survival of cases on appeal does not prevent the abatement of actions that are personal to the decedent. *State v. Buechele,* 236 N.W.2d 322, 324 (Iowa 1975) (considering Iowa Code § 686.17 (1975)). In *Buechele* the attorney general had filed an action to remove a county supervisor from office. *Id.* at 323. The trial court ordered the supervisor's removal. *Id.* While the case was on appeal, the supervisor died. *Id.* at 324. We held that the death of the supervisor abated the removal action and that the survival statute did not apply because the controversy was personal to the supervisor. *Id.* at 325.

Similarly, here the action to vacate the adoption was personal to Jeffrey. Therefore, section 611.20 does not prevent abatement of this action. We reverse the district court's order vacating Jeffrey's adoption of Robert.

### III. *Disposition of Social Security Benefits.*

As we have already noted, Robert received dependent social security benefits from the federal government. Payments had originally been made to Jeffrey on Robert's behalf. Jeffrey saved these funds and later deposited them with the clerk of court upon order of the district court. Before the court's final order in these cases, Kathy became the representative payee for Robert's social security benefits. She deposited that portion of the benefits she had not spent with the clerk of court.

The district court ordered the funds deposited with the clerk be used to pay court costs and the fees of the attorneys representing Robert, Kathy and Jeffrey. Any funds remaining were to be held in trust until Robert reached age eighteen. Although the parties did not anticipate the payment of future benefits due to the vacation of the adoption, the court ordered that any funds received in the future also be deposited in the trust.

Kathy objects to this order except the provision for payment of Robert's attorney fees. We review the issue of the court's authority to direct the disposition of Robert's benefits for correction of errors of law. *See Tigges v. City of Ames,* 356 N.W.2d 503, 512 (Iowa 1984) (review of proceedings concerning subject matter jurisdiction is at law). With this exception, our review of the court's order is de novo. *In re Marriage of Geil,* 509 N.W.2d 738, 740 (Iowa 1993).

A. *Should Robert's social security benefits be used to pay the court costs in the dissolution and adoption actions as well as the attorney fees for the parties to those cases?* The purpose of dependent social security benefits is to support dependent children of disabled wage earners. *Jimenez v. Weinberger,* 417 U.S. 628, 634, 94 S.Ct. 2496, 2500, 41 L.Ed.2d 363, 369 (1974). Consistent with this purpose, federal regulations require that the representative payee use the disability payments only for the benefit of the child and consistent with the child's best interests. 20 C.F.R. § 404.2035(a) (1994). Payments are used for the benefit of the child if they are used for the child's current maintenance.[2] *Id.* § 404.2040(a). Current maintenance includes "the cost of food, shelter, clothing, medical care, and personal comfort items." *Id.*

Any amount remaining after proper expenditures must be conserved or invested on behalf of the child. *Id.* § 404.2045(a). If a representative payee does not comply with these regulations, the Social Security Administration (SSA) will attempt to replace the payee. *Id.* § 404.2050(a). The payee may also be subject to criminal liability for conversion. 42 U.S.C. § 408(a)(5) (Supp. IV 1992).

We think the use of Robert's disability benefits to pay the court costs and attorney fees incurred by Jeffrey and Kathy in their marital and adoption disputes would be inconsistent with these regulations. These

---

**2.** Benefits may also properly be used for institutional care of the child and claims of creditors.

20 C.F.R. § 404.2040 (1994).

expenses were not incurred for Robert's current maintenance or for his benefit. Therefore, we reverse the district court's order that the funds on deposit with the clerk of court be used for this purpose.

We affirm the district court's decision that Robert's social security benefits be used to pay the fees and expenses of the attorney representing him in these proceedings. The attorney's representation benefited Robert and the use of his dependent payments in this manner is appropriate.

B. *Should past and future benefit payments be held in trust until Robert is eighteen?* Kathy contends that a state court has no authority to direct the use of dependent benefits by a representative payee because federal law governs that matter. She also asserts that the district court's order that Robert's social security benefits be held in trust until he is eighteen conflicts with federal law.

A representative payee must make an accounting to the SSA for the expenditure of benefits. 20 C.F.R. § 404.2065 (1994). However, the SSA's review of the payee's accounting is only for purposes of removal of the payee. *Catlett v. Catlett,* 55 Ohio App.3d 1, 561 N.E.2d 948, 952 (1988) (*citing In re Kummer,* 93 A.D.2d 135, 461 N.Y.S.2d 845, 860 (1983)). The SSA does not resolve disputes between a payee and a beneficiary concerning the use of benefits. *In re Kummer,* 93 A.D.2d 135, 461 N.Y.S.2d 845, 860 (1983); *Catlett,* 561 N.E.2d at 952. Although the federal government may prosecute a payee who converts a beneficiary's funds, there is no federal mechanism to prevent such a conversion from occurring. Moreover, once the SSA pays the benefits to the proper representative payee, it has no liability to the beneficiary for misuse of the payments. 42 U.S.C. § 405(k) (1988).

Given the limited role the federal government plays in monitoring the expenditure of social security benefits, other courts have held that state courts may hear disputes concerning the use of these benefits and otherwise guard against their misuse. *Shields v. Katz,* 143 A.D.2d 743, 533 N.Y.S.2d 451, 453 (1988) (dispute between payee and

beneficiary on use of benefits to pay for institutional care); *In re Kummer,* 461 N.Y.S.2d at 861 (dispute between payee and stepparent on use of benefits); *Catlett,* 561 N.E.2d at 954 (dispute between divorced parents as to propriety of mother's expenditure of child's benefits). *But see Deweese v. Crawford,* 520 S.W.2d 522, 526 (Tex.Ct.App. 1975), *overruled on other grounds by Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768 (Tex.1989) (any dispute between parents and payee as to use of dependent's social security benefits must be resolved through federal administrative process). The assumption of state court jurisdiction is based in part on the state's interest in the welfare of children residing within its borders. *See Catlett,* 561 N.E.2d at 953.

We agree with those courts that allow state courts to look into the expenditure of dependent social security benefits when an interested party questions the propriety of those expenditures. Here Jeffrey, Robert's adoptive father, testified that Kathy used Robert's benefits to purchase luxury items for herself such as a pontoon boat, rather than for Robert's current maintenance. We think the trial court had jurisdiction to enter an appropriate order to ensure that the remaining past benefits and all future benefits be spent in a manner contemplated by federal and state law.

The next question we must decide is whether Robert's benefits should be held in trust until he reaches age eighteen. Kathy argues that some portion of these benefits are needed for Robert's current support. The trial court ordered that all benefits be placed in the trust account and made no provision for any withdrawal of funds prior to the termination of the trust when Robert is eighteen.

We think that the creation of a trust for the safekeeping of Robert's social security disability benefits is appropriate. However, we think that only that portion of his benefits not needed for current maintenance should be deposited in the trust account.

There is no federal requirement that a parent's independent assets be exhausted before the child's benefits may be used for

current maintenance. *Mellies v. Mellies,* 249 Kan. 28, 815 P.2d 114, 117 (1991). *But see In re Kummer,* 461 N.Y.S.2d at 853 (payee should not use benefits for beneficiary's current support where parents had ability to fully pay for beneficiary's current maintenance). Moreover, as discussed earlier, federal regulations allow Kathy to use Robert's benefits to pay for his current needs. We think any order that effectively prohibits Kathy from doing so conflicts with federal law. *See Mellies,* 815 P.2d at 117 (requirement that parent exhaust independent assets before dependent social security benefits could be used for beneficiary's current support is inconsistent with federal regulations); *Catlett,* 561 N.E.2d at 954 (restrictions on payee's use of funds for beneficiary's current maintenance defeats the purpose of the benefits).

This result is not only consistent with federal law but is also equitable. Social security disability payments made to a disabled parent's child are not a windfall to the dependent. They represent a replacement of income that would otherwise be available from the disabled parent for the dependent's current support. *Potts v. Potts,* 240 N.W.2d 680, 681 (Iowa 1976). Therefore, it is equitable to allow Kathy to use Robert's benefits for this purpose.

IV. *Summary.*

We reverse the district court's order vacating Jeffrey's adoption of Robert. We also reverse the court's order that court costs and Jeffrey's and Kathy's attorney fees be paid from Robert's social security benefits.

We modify the district court's order to require only that portion of Robert's future social security payments not needed for his current support be placed in the trust account. We remand this case to the district court for a hearing to determine that amount. We further modify the district court's order to provide that the court may order disbursement of any funds deposited in the trust account upon proper application and demonstration that such funds are needed for Robert's current maintenance.

That portion of the district court's order not in conflict with our opinion is affirmed. Costs are taxed one-half to each party.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**