OPINION OF THE COURT
John P. Lane, J.
When this claim arose, Bernadette Muller was a patient at Gowanda Psychiatric Center (GPC), where she was admitted on September 9, 1989.[1] On June 14, 1990 pursuant to Federal regulations (20 CFR 404.2001 et seq.), John Collier, the director of GPC, was appointed her representative payee by the Social Security Administration. According to the claim, in late 1990 and early 1991 he collected retroactive Social Security disability benefits owed claimant totaling $37,249 and applied $32,239.32 to payment for care previously provided at GPC. The claim also alleges that from December 1990 on Collier applied $397 of claimant’s monthly benefits of $432 to the cost of her current care, leaving only $35 for her use as spending money. All of this happened without consultation with or consent by Ms. Muller.
Claimant contends that she was entitled to care by the State and that pursuant to Federal law her Social Security benefits were beyond the reach of her creditors, including the State. Further, she points to Mental Hygiene Law § 29.23 as allowing the director of GPC to receive funds or other personal property belonging to her not exceeding $5,000 in value or amount and limiting the use thereof in the first instance to providing luxuries, comforts and necessities for her. Accordingly, she argues that for sums in excess of $5,000, the director was obligated to seek the appointment of a conservator as he had no legal authority to receive such funds.[2] Moreover, she points out that Mental Hygiene Law § 33.07 (e) imposes a fiduciary duty upon a director of a mental hygiene facility who receives Social Security benefits as a representative payee for a patient. Claimant further contends that Collier, as an official of the Department of Mental Hygiene, was burdened by a conflict of interest *982 that disqualified him from serving as her representative payee and using her funds to pay for her care rather than setting them aside for her benefit. Thus, she concludes that Collier breached his fiduciary duty when he applied her benefits to the cost of her care without her consent or that of a conservator.[3] In contrast, defendant argues that Federal law and regulations permitted Collier to act as representative payee of claimant’s Social Security benefits and to disburse them for her care. It contends that Mental Hygiene Law § 29.23 has no force or effect in this context as it predates the Social Security Act (42 USC § 301 et seq.) and Federal regulations implementing it.
In 1992, claimant moved for partial summary judgment with respect to liability and defendant cross-moved for summary judgment dismissing the claim, arguing that the court lacked subject matter jurisdiction or, in the alternative, that because there was a pending Federal class action (the Balzi/Brogan action) involving the issues raised by the claim, this action should be dismissed or stayed. The motion and cross motion came on before Judge Thomas P. McMahon, now retired, who, with some misgivings, felt obliged to await the outcome of the Federal action. Accordingly, by order filed December 13, 1993, he denied summary judgment to both parties and stayed further proceedings on the claim pending the outcome of the Federal case.
In due course, the Balzi ¡Brogan action was negotiated to a conclusion in the form of a stipulation and order of settlement and dismissal in exchange for Office of Mental Hygiene’s agreement to provide certain notices and safeguards to patients regarding their Social Security benefits. Regrettably the resolution of the Federal case did not deal with the effect, if any, that the Mental Hygiene Law has on the receipt and use of funds by facility directors acting as representative payees of Social Security benefits to which persons such as claimant are entitled.[4] The Federal litigation having ended, Judge McMahon’s stay expired and the parties have resubmitted the motion and cross motion for summary judgment. For the reasons *983 that follow, defendant’s cross motion for summary judgment is denied and claimant’s motion for partial summary judgment is granted.
Federal law allows payment of Social Security benefits either directly to the beneficiary or to a relative or some other person for his or her use and benefit. (42 USC § 405 |j].) Implementing regulations authorize a State institution to serve as a representative payee, but place a public institution in the third preference rank behind a legal guardian, spouse or other relative in the first rank, and a close friend in the second rank. (20 CFR 404.2021 [a].) A representative payee must apply the payments received in accordance with guidelines provided in the regulations “in the best interests of the beneficiary”. (20 CFR 404.2035 [a].) The guidelines allow the use of benefits for the “current maintenance” of a beneficiary, which includes customary charges for in-patient care made by a State institution. (20 CFR 404.2040 [a], [b].) On the other hand, the guidelines make clear that a representative payee may determine that a beneficiary’s needs will be best served by applying funds received first to the beneficiary’s personal needs before paying an institution’s customary charges for care. (20 CFR 404.2040 [b].) Moreover, a representative payee does not have to use benefit payments to satisfy past debts of the beneficiary without first considering the current and reasonably foreseeable needs of the beneficiary. (20 CFR 404.2040 [d].)
The Social Security Act and Federal regulations under which Collier acted are not being challenged in this action, which focuses on his compliance with State law. The adoption by the State of procedural safeguards governing the handling of Social Security benefits by State payees is not precluded by the Supremacy Clause (US Const, art VI, cl 2; see, Shields v Katz, 143 AD2d 743, and cases cited there). As claimant’s case is based upon two sections of the Mental Hygiene Law governing the handling of Social Security benefits by State payees, it follows that the Court of Claims has subject matter jurisdiction of this action for damages. (See, State of New York v Jacobs, 167 AD2d 876; Shields v Katz, supra; Court of Claims Act § 9.)
Mental Hygiene Law § 29.23 allows the Commissioner of Mental Hygiene to authorize directors of Department facilities to receive or obtain funds due to or belonging to a patient who has no committee up to an amount not exceeding $5,000; and where there is a committee, to receive funds not exceeding the same amount when the committee is discharged. Funds so received must be placed to the credit of the patient and *984 disbursed “to provide, in the first instance, for luxuries, comforts, and necessities for such patient, including burial expenses, and, if funds are thereafter available, for the support of such patient.” (Mental Hygiene Law § 29.23.) The final paragraph of section 29.23 provides that when receiving funds of a patient pursuant to law, a director does so in his or her official capacity and as an exercise or performance of a power and duty conferred by that section.
Section 2732 of the Department of Mental Hygiene policy manual reinforces the $5,000 limit on the authority of directors of Department facilities to receive or obtain funds of a patient and the limitation on use of those funds established in Mental Hygiene Law § 29.23. Furthermore, in section 2735 of the manual is found a policy statement that the Department should ask the court to appoint a fiduciary for a patient in those instances where there is substantial income or assets or special needs for the patient to have legal representation, and otherwise to handle patients’ funds under the authority of section 2732. From all of this it is clear that Collier’s authority under State law and Department policies was limited to receiving $5,000 and applying those funds in accordance with Mental Hygiene Law § 29.23.
Defendant’s argument that because Mental Hygiene Law § 29.23 predated the Social Security Act it has no application to Collier as representative payee is unavailing. Section 29.23 was enacted as a part of the recodification of the Mental Hygiene Law in 1972 long after the Social Security Act took effect. It is significant that in doing so the Legislature did not exempt Social Security benefits received by a representative payee from the long-standing $5,000 limitation on a facility director’s authority.[5] Moreover, Mental Hygiene Law § 33.07 (e), which provides for the protection of a patient’s property and funds by requiring a mental hygiene facility that is a representative payee for a patient pursuant to designation by the Social Security Administration or that otherwise assumes management responsibility over funds of a patient to maintain such funds in a fiduciary capacity to the patient, was enacted in 1986 and clearly applies in this case.
Section 33.07 (e) of the Mental Hygiene Law calls for the Commissioners of Mental Health and Mental Retardation and Developmental Disabilities to develop standards regarding the *985 management of patient funds. This they have failed to do in such a way as to avoid placing facility directors who receive patient funds in a conflict of interest with their wards. 14 NYCRR part 15 contains regulations governing admission and retention of full-time inpatients in facilities such as GPC. Section 15.2 of that part, while favoring patient retention of personal property and money, provides simply that all patient funds be held in trust on his or her behalf. Section 2725 of the Department’s policy manual establishing the responsibility of facility directors who act as representative payees of Social Security benefits places primary emphasis on the payment of charges assessed by the Bureau of Patient Resources for the patient’s care and maintenance and suggests that the patients’ monthly spending allowance “be utilized in their best therapeutic interests” by supplying items and services not normally provided by the institution. It is significant that this policy makes the payment of all charges for care rather than merely current maintenance charges a first priority and omits any reference to the numerous other expenditures for the benefit of patients that Federal regulations permit.
As a fiduciary Collier was faced with a clear conflict of interest when he undertook to become claimant’s representative payee and later disbursed her funds. Mental Hygiene Law § 43.01 which imposes a duty on the Department of Mental Hygiene to charge fees for its services to patients and residents also provides that “no person shall be denied services because of inability or failure to pay a fee.” (Mental Hygiene Law § 43.01 [a].) Thus, claimant was entitled to care whether she paid or not. On the other hand, Mental Hygiene Law § 43.03 (a) provides that “[t]he patient, [her] estate * * * [her] committee and any fiduciary or representative payee holding assets for [her] or on [her] behalf are jointly and severally liable for the fees for services rendered to the patient.” It is apparent that Collier chose to satisfy that liability by paying over most of claimant’s retroactive and current benefits to his Department. In doing so, Collier no doubt was following section 2725 of the policy manual making payment of the “customary charges” for patient care, past and current, the priority for use of her Social Security benefits. Given the language of Mental Hygiene Law § 43.03 and policy manual section 2725, it seems highly unlikely that any facility director would do otherwise.
What might have happened if the Department had sought the appointment of a neutral conservator for claimant? The conservator would have been appointed claimant’s representa *986 tive payee. (20 CFR 404.2021.) Notwithstanding the language of Mental Hygiene Law § 43.03, as claimant’s representative payee the neutral conservator would have been immune from suit or any other form of “legal process” so long as the disability benefits had been used in accordance with Federal regulations. (See, State of New York v Jacobs, 167 AD2d 876, supra; 42 USC § 407 [a].)[6] Furthermore, as representative payee the conservator would have been under no obligation to apply any part of claimant’s benefits to the cost of her care. (See, Kriegbaum v Katz, 909 F2d 70, 73-74.) The conservator could have applied the Social Security funds to those purposes he or she determined were in claimant’s best interests. (20 CFR 404.2035, 404.2040.) Thus, the neutral conservator, without fear of threat, sanction or suit, could have paid some or all of the State’s claim for past or current care if claimant’s other current and reasonably foreseeable needs, such as clothing and other personal items, could be met.[7] (See, 20 CFR 404.2040 [d].)
By seeking appointment as claimant’s representative payee and collecting her benefits and paying them over to his employer, Collier made the State a preferred creditor, which constituted a violation of 42 USC § 407 (a). (See, Fetterusso v State of New York, supra, 898 F2d, at 328.) As Collier had a conflict of interest with claimant, he should not have undertaken to act as her representative payee. (See, Matter of Commissioner of Cayuga County Dept. of Social Servs. [Bessie C.], 225 AD2d 1027.) Moreover, he exceeded his authority as director in receiving more than $5,000 of claimant’s funds as well as breaching his fiduciary duties in preferring the State over her interests. Thus, the court finds the State liable for all funds received in its capacity as representative payee for claimant in excess of $5,000 and excluding the monthly $35 allowance for personal necessities. The court further finds that the State is liable for any sums from the initial $5,000 received on claimant’s behalf that can be shown to have been inappropriately applied to charges for her care.
This claim having been filed December 6, 1991, defendant’s answer having raised the jurisdictional defense of untimely filing and service, and no request for late claim relief having *987 been made, the court would ordinarily limit any recovery to damages incurred no more than 90 days prior to the date of filing. In this case, such a result would exclude recovery for the large lump-sum payments made in December of 1990 and January of 1991. Here, however, it is clear that claimant was under a legal disability from at least September 9, 1989 to October of 1991 given her status as an inpatient of a State psychiatric hospital. Under such circumstances, the time limitation for filing a claim is tolled for a period of two years following removal of the disability (Court of Claims Act § 10 [5]), and the instant claim, which was filed within two months of claimant’s discharge from in-patient status, is timely with respect to all the payments received from Social Security.

. Claimant was discharged and removed from legal status in October 1991 and now resides in a State-operated community residence on the GPC grounds.

. The claim arose before the effective date of the new article 81 of the Mental Hygiene Law that provides for the appointment of guardians to provide for the personal needs and/or management of the property of incapacitated persons.

. The claim also alleges violation of claimant’s rights under the Federal and New York State Constitutions. Because of the conclusions reached herein concerning the State law claims, the court does not reach the constitutional issues raised.

. Defendant has conceded that the stipulation bars the use of Mental Hygiene Law § 29.23 certificates of authority until regulations are published which contain provisions for due process. The certificate of authority procedure has been under suspension since July 1990 and no such regulations have been published.

. The Legislature has included references to representative payees in sections 33.07 (e) and 43.03 of the Mental Hygiene Law.

. “Legal process” is a term which has been given a broad meaning, including resort to express or implied threats and sanctions. (See, Fetterusso v State of New York, 898 F2d 322, 328.)

. Claimant also argues that her benefits could have been used to provide a college education, private housing and private transportation in the future.