769 A.2d 296 (2001)
137 Md. App. 639
William ECOLONO, Jr.
v.
DIVISION OF REIMBURSEMENTS OF THE DEPARTMENT OF HEALTH AND MENTAL HYGIENE.
No. 1243, Sept. Term, 2000.
Court of Special Appeals of Maryland.
April 2, 2001.
*298 Laura L. Cain, Baltimore, for appellant.
Wendy A. Kronmiller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellee.
Argued before DAVIS, JAMES R. EYLER, and KENNEY, JJ.
*297 JAMES R. EYLER, Judge.
The question presented by this case is whether the State Department of Health and Mental Hygiene violated State or federal law when it utilized Social Security benefits, payable to an individual committed to a State hospital, to pay current charges for that inpatient care. We find a violation of federal law and, as a result, shall reverse the decision of the Circuit Court for Howard County.

Factual Background
On December 10, 1994, William Ecolono, Jr., appellant, was committed to institutional care at the Clifton T. Perkins Hospital Center (the Hospital), a mental health facility operated under the direction of the Mental Hygiene Administration, an agency of the Department of Health and Mental Hygiene, appellee. It was the fourth such admission for appellant. Appellant was conditionally released from the Hospital on March 26, 1996.
On May 16, 1995, William Varley, a financial agent supervisor employed by appellee's Division of Reimbursements, applied to the Social Security Administration (SSA) requesting that the Secretary of the *299 Department of Health and Mental Hygiene (the Secretary), as head of the agency, be appointed representative payee for appellant. Federal law required that SSA appoint a representative payee for the purpose of receiving Social Security benefits owed appellant because appellant was incapable of handling his own finances.
On or before February 2, 1996, the SSA appointed the Secretary representative payee. On February 2, 1996, Mr. Varley learned that appellant had been awarded $17,155.40 by the SSA, representing back payment of Social Security disability benefits.[1]
Under Maryland law, financial agents such as Mr. Varley were required to determine an individual patient's assets and to calculate the cost of institutional care pursuant to a formula contained in the applicable regulations. Pursuant to those regulations, Mr. Varley calculated the amount due for care, subtracted $2,500 as an exempt amount plus $80 for personal needs expenses, and applied the net amount of $14,575.40 to pay the State's bill for institutional care for the months of February and March.
On February 7, 1996, Mr. Varley advised appellant and his social worker that he had applied the funds as above. He also advised them that appellant had the right to seek both an informal and a formal review.
The charge in the amount of $14,575.40 was for the period of February 1 through March 31, 1996. Because appellant was actually released on March 26, Mr. Varley recomputed the charge and refunded $1,347.21 to appellant.
Subsequent to the payment of disability benefits on February 2, 1996, appellant's father requested that SSA appoint him representative payee. This request was eventually granted.
Appellant's conditional release on March 26 was conditioned on his residing apart from his parents in 90 days or less after his release. The terms of the release also required him to attend Alcoholics Anonymous and Narcotics Anonymous meetings daily for the first 90 days of his release and weekly thereafter.

Administrative Hearing
Appellant challenged the application of his disability benefits to the payment of the bill for institutional care and pursued his challenge through the administrative process. On July 18, 1996, a hearing was conducted at the Office of Administrative Hearings. At that hearing, appellant asserted that (1) federal law required a representative payee to use disability benefits in the best interest of the beneficiary; (2) federal law prohibited a creditor, including the State, from seizing Social Security benefits; and (3) State law required appellee to investigate a patient's expenses prior to assessing charges against him. Appellant argued that these laws had been violated by appellee.
At that hearing, a member of appellant's treatment team at the Hospital testified that appellant, after release, would have living expenses and would incur costs in reviving his prior lawn care business. The witness testified that monies would have to be expended for those purposes in order for appellant to become self-supporting. The treatment team member testified that she knew, at some point pre-release, that appellant would be receiving money from Social Security, but that he would probably *300 not get it until February or March. She explained that the 90-day provision was put in the release so that he would have ample time to get money. The treatment team member explained more specifically that appellant would incur post-release expenses for the following: (1) rent plus security deposit, (2) furnishings, (3) gas, electric, and phone service, (4) medication for bipolar disorder and substance abuse, (5) cost of urine screens, (6) fees charged by clinics not covered by medical assistance, and (7) costs to repair equipment for his landscaping business. The member of the team further testified that it had been her understanding that some money would be taken out of the Social Security benefits to pay the State's bill, but she had assumed that he would have adequate funds remaining for his discharge plan. On direct examination, when asked whether, in her opinion, he in fact had adequate funds for his discharge plan, she stated that it would be very difficult for him to do what he had to do on the money available, and that it did compromise his discharge plan. Our reading of the transcript indicates that the witness was under the impression that appellant had been paid $2,500. On cross-examination, when asked whether she thought $3,900 [the amount paid to appellant] was adequate, she stated that she was not "really qualified to determine a price of what it's going to cost him to live."
At the time that Mr. Varley paid the State's bill, he was not aware that appellant was about to be released, and he had no communications with appellant's treatment team. The treatment team was not aware that the benefits had been received and applied in the manner that they were applied until after the application of the funds on February 2, 1996. The treatment team made no request to Mr. Varley for the payment of expenses.
At the time of the hearing before the administrative law judge (ALJ), appellant resided with a friend, rent-free. He had applied for and qualified for medical assistance. He had placed a deposit on an apartment with a monthly rent of $624. Appellant's father testified that a portion of the Social Security disability benefits given to him by appellee had been used by him to repair his lawn equipment and that $450 to $500 remained.
As previously stated, the charge calculated by Mr. Varley covered the months of February and March, 1996. The cost of hospitalization for February was $9,490, computed at $312 per day. The cost for the month of March was $5,085.40, computed at $167.19 per day. After calculation of the refund due, subtraction of $2,500 as exempt, and subtraction of $80 for living expenses, appellant was paid a total of $3,927.40. As of the time of the hearing before the ALJ, appellant was receiving $511 monthly in Social Security benefits, which terminated effective January 1, 1997.[2]
The ALJ concluded that, under Maryland law, appellant was primarily liable for the cost of his institutional care and that appellee violated neither State nor federal law in applying the benefits received to his bill for current care. The Secretary adopted the ALJ's decision, and the Secretary's decision was affirmed by the Board of Review. Appellant filed a petition for judicial review in the Circuit Court for Howard County. The circuit court affirmed the agency's decision.

*301 General Principles of Law

Federal
The Social Security Act provides for the payment of benefits to aged persons, blind persons, and mentally or physically disabled persons. See 42 U.S.C. § 401, et seq.
If an individual is unable to manage his benefits, a person or entity can apply to be representative payee to receive the individual's benefits. See 42 U.S.C. § 405(j). If the SSA certifies the representative payee, it pays the benefits to that payee. 42 U.S.C. § 405(j)(1)(a). The payments are paid to the payee as a fiduciary to be used for the use and benefit of the beneficiary. Id. The statute provides that if the SSA or a court of competent jurisdiction determines that a representative payee misused funds, the SSA shall revoke the certification of the representative payee. Id.
Federal regulations provide that the representative payee shall be an individual or agency who best serves the interests of the beneficiary. See 20 C.F.R. § 404.2001(a). Factors to be taken into account in certifying a representative payee are the relationship of the payee to the beneficiary, the amount of interest that the payee has shown in the beneficiary, and whether the payee is in a position to know of and look after the needs of the beneficiary. 20 C.F.R. § 404.2020.
Appellee points out that prior to the 1996 amendment to exclude persons whose disability was contributed to by alcohol and drug addiction from receiving disability benefits, the regulations provided that a governmental agency whose mission was to carry out income maintenance, social service, or health care-related activities was a preferred applicant to become representative payee for a person with an alcohol or drug addiction. See 42 U.S.C. § 405(j)(2)(C)(V). Subsequent to the amendment, such an agency with custody can qualify as representative payee but without the preference as before. 20 C.F.R. § 404.2021(a)(3) (A public or nonprofit agency with custody is third in order of preference to (a) a legal guardian, spouse, or other relative with custody, and (b) a friend with custody.) As stated in the regulations, SSA's primary concern is to select a payee who will best serve the beneficiary's interest. 20 C.F.R. § 404.2021.
Appellant points out that the Social Security Act further provides, however, that payment of benefits shall not be certified to creditors of the recipient who supply the recipient with goods or services for consideration, except that an administrator, owner, or employee of a State licensed or certified health care facility having custody of the disabled person could be certified as representative payee after good faith efforts by the SSA to locate an alternative representative payee to whom certification of payment would serve the best interest of the individual. See 42 U.S.C. § 405(j)(2)(c)(iii)(IV).
The following regulations are of particular significance in this case. 20 C.F.R. § 404.2035(a) provides:
A representative payee has a responsibility to
(a) Use the payments he or she receives only for the use and benefit of the beneficiary in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary....
20 C.F.R. § 404.2040(a) and (b) provide:
(a) Current maintenance. (1) We will consider that payments we certify to a representative payee have been used for the use and benefit of the beneficiary if they are used for the beneficiary's current maintenance. Current maintenance *302 includes cost incurred in obtaining food, shelter, clothing, medical care, and personal comfort items.

Example: An aged beneficiary is entitled to a monthly Social Security benefit of $400. Her son, who is her payee, disburses her benefits in the following manner:
Rent and utilities.............. $200
Medical........................... 25
Food.............................. 60
Clothing (coat)................... 55
Savings........................... 30
Miscellaneous..................... 30
The above expenditures would represent proper disbursements on behalf of the beneficiary.
(2) Notwithstanding the provisions of paragraph (a)(1) of this section, if a beneficiary is a member of an Aid to Families With Dependent Children (AFDC) assistance unit, we do not consider it inappropriate for a representative payee to make the benefit payments available to the AFDC assistance unit.
(b) Institutional care. If a beneficiary is receiving care in a Federal, State, or private institution because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution.

Example: An institutionalized beneficiary is entitled to a monthly Social Security benefit of $320. The institution charges $700 a month for room and board. The beneficiary's brother, who is the payee, learns the beneficiary needs new shoes and does not have any funds to purchase miscellaneous items at the institution's canteen.
The payee takes his brother to town and buys him a pair of shoes for $29. He also takes the beneficiary to see a movie which costs $3. When they return to the institution, the payee gives his brother $3 to be used at the canteen.
Although the payee normally withholds only $25 a month from Social Security benefit for the beneficiary's personal needs, this month the payee deducted the above expenditures and paid the institution $10 less than he usually pays.
The above expenditures represent what we would consider to be proper expenditures for current maintenance.
A section of the Social Security Act of particular significance in this case is 42 U.S.C. § 407(a), which provides:
The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

State
Under Maryland law, the recipient of inpatient services is primarily liable to pay for those services. See Md.Code (1994 Repl.Vol.), Health General ("HG") Article § 16-203. The amount charged is determined after an investigation of the recipient's ability to pay. HG § 16-202; COMAR § 10.04.02.01. This includes an investigation of the person's income, assets, and expenses. COMAR § 10,04.02.03A.
The regulations establish a rate schedule for each State mental health facility, including a maximum daily charge. COMAR § 10.02.01.03D. The State's financial agents then establish an appropriate *303 daily rate for each patient, up to the maximum, based on the patient's ability to pay. COMAR § 10.02.01.04A(2). Certain assets are exempted from the ability to pay analysis, including a primary residence, household furnishings, a motor vehicle, and liquid assets with a value of $2,500. COMAR § 10.04.02.03(G)(1).
For purposes of determining a recipient's ability to pay, the regulations provide that appellee shall consider all of the recipient's assets and income to be available for billing purposes. COMAR § 10.04.02.03(G). They further state that in recognition of an individual's ongoing financial needs, appellee shall consider a reduction in billing by permitting the income allowances, asset exemptions, and allowable expenses provided by regulation. Id. They further provide that a billing reduction may not be permitted unless and until the recipient of services submits appropriate written documentation demonstrating his or her entitlement to the billing reduction. Id. Expenses that must be deducted from gross income in determining ability to pay include:
Reasonable allowances shall be made for necessary and appropriate purchases of clothing and other personal items which may be used by the recipient of services while in a residence or during the course of a clinically sponsored activity. Clinicians responsible for the recipient of services[,] care and treatment shall be consulted to determine the appropriateness of the requested item.
COMAR 10.04.02.04(G)(3)(d).

Contentions of the Parties
Appellant first contends that the circuit court erred in concluding that the Secretary did not have a fiduciary duty to use the Social Security disability benefits in the interest of appellant as beneficiary and in failing to find a breach of such duty in appellee's failure to consider appellant's discharge needs. Second, appellant contends that the circuit court erred in refusing to hold that appellee's process of applying appellant's benefits to the State's charges for services violated 42 U.S.C. § 407(a). Third, appellant contends that the circuit court erred in failing to hold that appellee did not violate State law based on a failure to investigate appellant's financial condition and expenses.
Appellee, in response to the first contention, asserts that Federal and State law permitted the application of Social Security disability benefits to the payment of costs for current maintenance. With respect to the second contention, appellee asserts that the argument was not presented to the ALJ and, thus, is not properly before us. In the alternative, appellee asserts that § 407(a) does not apply because there was no legal process. With respect to the last contention, appellee contends that its financial agent did conduct an investigation in accordance with State law and that appellee's decision in that regard was supported by substantial evidence. Finally, appellee contends, even though not raised below, that the courts of this State lack subject matter jurisdiction.

Subject Matter Jurisdiction
Even though the question of subject matter jurisdiction was not raised below, we may consider it on appeal. See Md. Rule 2-324(b); Jones v. Jones, 259 Md. 336, 342, 270 A.2d 126 (1970); Bogley v. Barber, 194 Md. 632, 641, 72 A.2d 17 (1950).
Appellee argues that the Social Security Act provides the opportunity for a hearing to contest appointment of a representative payee, 42 U.S.C. § 405(j)(2)(E)(i), and a remedy for the payee's breach of duty. 42 U.S.C. § 408(a)(5) (provides criminal penalties for willfully converting payments to *304 a use other than for recipient); 20 C.F.R. § 404.2041 (if the SSA makes payment to a representative payee, the representative payee may be liable for the payee's misuse of funds but the SSA is not liable); 20 C.F.R. § 404.2050 (the SSA will replace a representative payee if it is advised that the payee has not carried out its responsibilities). Appellee concludes that the existence of a federal remedy prevents State interference with a representative payee's application of Social Security benefits.
Appellee also cites certain cases, including Jarvis v. Bowen, 1986 WL 83379, (1986 U.S. Dist. LEXIS 17092, Unemployment Ins. Rep. (CCH) P17968 (D.Minn.1986)). In Jarvis, a person claiming social security benefits sought judicial review of the SSA's appointment of a representative payee. The claimant was in a State facility. The SSA appointed a county welfare department as representative payee. A federal administrative law judge determined that the appointment was not in violation of the law but found that the policy of the welfare department, which allocated benefits without taking into account the claimant's needs, did not serve the best interest of the claimant. The ALJ ordered the payee to set aside $85 per month from the claimant's monthly benefits for personal use. The court upheld the ALJ's conclusions. Significantly, for purposes of the present issue, the court did not address the question of jurisdiction of State courts.
Appellee also relies on In Re Estate of Merritt, 272 Ill.App.3d 1017, 209 Ill.Dec. 502, 651 N.E.2d 680 (1995). In that case, the question was whether the court could force the guardian of the disabled person to use Social Security disability benefits to pay a State institution. The court held that the federal regulations were permissive and, while such were payments proper, the regulations did not mandate them. Id. 209 Ill.Dec. 502, 651 N.E.2d at 683. The court also opined that a representative payee may be held liable for misuse of funds under federal law and observed that it is the federal government's responsibility to enforce the duties of representative payees. Id. The court did not discuss but apparently assumed it had jurisdiction.[3]
The third case relied on by appellee is C.G.A. v. State, 824 P.2d 1364, 1369 (Alaska 1992). In C.G.A., the recipient of social security benefits was a minor. The recipient was adjudicated a delinquent, placed in foster care, and ultimately confined in a youth center. The recipient's mother was representative payee for a period of time and subsequently a State agency was certified as representative payee. The State attempted to garnish benefits received by the recipient's mother for the cost of detention, and the court held that such action was prohibited by § 407(a). Id. at 1367. The court observed that, after the State agency became representative payee, it could voluntarily pay the State for maintenance, i.e., costs of the recipient's foster care, but reserved jurisdiction on the question of whether it could pay the State for the cost of detention. Id. at 1369-70. The court concluded that the parties should be afforded the opportunity to obtain an initial determination of the question from SSA. Id. The court opined that the SSA should be requested to determine whether 20 C.F.R. § 404.2040(b) is limited to the costs of mental or physical care institutions, whether the State agency as representative *305 payee should first conduct an individual assessment of the recipient's needs before using the benefits for the cost of detention, and whether reimbursement violated § 407(a). Id. at 1370 n. 17. The court did not rule or even intimate that it did not have jurisdiction.
In Jahnke v. Jahnke, 526 N.W.2d 159 (Iowa 1994), the court did consider the question of State court jurisdiction. That court was faced with a dispute between a representative payee and the beneficiary with respect to the use of Social Security disability benefits. The court observed that a review by the SSA of a representative payee's expenditures was only for the purpose of determining whether to remove the payee. Id. at 163; see 20 C.F.R. § 404.2065 (the SSA may, in certain situations, verify how a representative payee uses the funds). The Jahnke court stated that the SSA did not resolve disputes between payees and beneficiaries relating to allocation of benefits. 526 N.W.2d at 163. The court concluded that State courts can look into the expenditure of Social Security benefits when questioned by an interested party. Id. (citing Shields v. Katz, 143 A.D.2d 743, 533 N.Y.S.2d 451, 453 (1988)(dispute between payee and beneficiary on use of benefits to pay for institutional care); In re Kummer, 93 A.D.2d 135, 461 N.Y.S.2d 845, 861 (1983)(dispute between payee and stepparent on use of benefits); Catlett v. Catlett, 55 Ohio App.3d 1, 561 N.E.2d 948, 954 (1988)(dispute between divorced parents as to propriety of mother's expenditure of child's benefits)).
Regardless of the extent of the duty of the SSA to monitor the expenditure of benefits by representative payees, we find nothing in federal law to indicate an intent by Congress to limit interested parties to the federal administrative and judicial review process and to prohibit State courts from exercising jurisdiction, in the case before us, when the relief requested is not the removal of the payee but a reallocation of the benefits. Consequently, we conclude that we have subject matter jurisdiction to decide a dispute between the beneficiary of social security benefits and his representative payee with respect to the allocation of those benefits. We also note that appellant asserts a State law as well as a Federal law claim. We shall proceed to address appellant's issues.

Duty to Act in Best Interests of Beneficiary
Appellant states that a member of his treatment team testified at the administrative hearing that it was in his best interest for at least a portion of his benefits to be used for his release and recovery. The essence of appellant's first contention is that, under the best interests standard, the Secretary had a duty to exercise discretion, but without knowledge of the treatment team's recommendation, and without acknowledging any duty to exercise discretion, the Secretary's agent automatically applied the benefits to appellant's bill for current maintenance.
Based on the federal statute and regulations set forth earlier in this opinion, we conclude that the application of social security benefits to current maintenance is regarded by the SSA as being in the best interest of the beneficiary. We also conclude that the services rendered to appellant came within the definition of current maintenance contained in § 404.2040(b). Under that subsection, current maintenance includes the customary charges made by the institution. Current maintenance also includes, however, expenditures for those items that will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions *306 while in the institution. In our view, it is questionable whether the expenses at issue in this case fall within the language of items "which will aid in the beneficiary's recovery or release from the institution." See 20 C.F.R. § 404.2040(b). That provision of the Code of Federal Regulations appears to relate to expenses incurred prior to release, as compared to the conservation of funds to be applied to expenses incurred after release. Nevertheless, the Secretary, as representative payee, had the right under federal law to apply security funds to post-discharge expenses if it was in the best interest of the beneficiary to do so.
Appellant relies on Jarvis v. Bowen, 1986 WL 83379, 1986 U.S. Dist. LEXIS 17092, Unemployment Ins. Rep. (CCH) P17968 (D.Minn.1986), a case previously discussed in connection with subject matter jurisdiction. In that case, a county welfare agency served as a representative payee and the beneficiary resided in a State institution. The patient's treatment team recommended outside psychiatric treatment that would aid his recovery and release from the institution. The representative payee took the position, in accordance with directions from the State, that it had to use the benefits solely to pay the cost of the hospital charges. Id. 1986 WL 83379 at *5, 1986 U.S. Dist. LEXIS 17092 at *12. The Jarvis court noted that § 404.2040(b) permits payment of institutional charges but also recognizes a need to pay for items that will aid in the beneficiary's recovery or release. Id. The case did not involve the payment of benefits following release.
Appellant also relies on In Re Estate of Merritt, 272 Ill.App.3d 1017, 209 Ill.Dec. 502, 651 N.E.2d 680 (1995). As previously noted in the discussion of jurisdiction, the question was whether the court could force the guardian of the disabled person to use Social Security benefits to pay the State institution. The court observed that the regulations were permissive, and that such payment was not mandatory. Id. 209 Ill. Dec. 502, 651 N.E.2d at 683. Additionally, with particular relevance to appellant's second contention discussed later in this opinion, the court observed that under 42 U.S.C. § 407(a), the money paid to the guardians could not be reached by the State without the guardian's consent. Id. 209 Ill.Dec. 502, 651 N.E.2d at 682.
Appellant next relies on State v. Jacobs, 167 A.D.2d 876, 561 N.Y.S.2d 972 (4th Dep't 1990). In New York v. Jacobs, the State of New York sued the representative payee of her son's Social Security disability benefits. The State sued to recover that portion of the benefits equal to the cost of services rendered to her son while he resided at a State facility. The court noted that the State's suit was barred by 42 U.S.C. § 407(a). Id. at 876-77, 561 N.Y.S.2d at 973. The court went on to note that the payee had spent the benefits on such items as clothing, shoes, razors, and haircuts for the beneficiary, which the State had failed to provide. Id. at 877, 561 N.Y.S.2d at 974. The court concluded that such use was in the best interest of the beneficiary. Id.
Appellee relies on Department of Health & Rehabilitative Servs. v. Davis, 616 F.2d 828, 831 (5th Cir.1980); Brogan v. Sullivan, 1992 WL 84778, 1992 U.S. Dist. LEXIS 4775 Unemployment Ins. Rep. (CCH) P16918 A (S.D.N.Y.1992); Fetterusso v. New York, 715 F.Supp. 1272, 1274, aff'd, 898 F.2d 322 (2d Cir.1990); and C.G.A. v. State, 824 P.2d 1364, 1369 (Alaska 1992). In Department of Health & Rehabilitative Serv. v. Davis, the State sought to collect for the care of a man who had resided at the Florida State Hospital for 4 years. The patient's guardian had accumulated over $40,000 in Social Security and Veteran's *307 benefits. The court held that the guardian had to pay a portion of those benefits to the State for the care of the individual. Id. at 832. The Fifth Circuit in Davis distinguished the earlier Supreme Court decision in Philpott v. Essex County Welfare Bd., 409 U.S. 413, 416-17, 93 S.Ct. 590, 592, 34 L.Ed.2d 608, 611-12 (1973), in which the Supreme Court had held that a county welfare board providing financial assistance could not sue to obtain Social Security benefits that were placed in a bank account. The Davis court stated that, in the case before it, the State was meeting all of the recipient's needs, unlike the recipient in Philpott, who was capable of providing in part for his own care. 616 F.2d at 830. The court in Davis, in effect, created an exception to the bar in § 407(a) that prohibits collection from social security benefits for charges previously incurred.
The Supreme Court, in Bennett v. Arkansas, 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988), refused to accept the Davis distinction. In Bennett, the State attached social security benefits paid to inmates in State prisons pursuant to a statute authorizing seizure of prisoners' property to defray the cost of maintaining the prison system. The Supreme Court of Arkansas had ruled in favor of the State. The Supreme Court stated:

Philpott may be factually distinguishable on the ground that there the State provided for only part of the needs of the Social Security recipient while here the State provides for all of the prisoners' needs, see Department of Health and Rehabilitative Services, State of Fla. v. Davis, 616 F.2d 828, 830 (CA5-1980)(relying on such a distinction.) But we do not think that such a distinction carries the day given the express language of § 407 and the clear intent of Congress that Social Security benefits not be attachable.
Bennett, 485 U.S. at 397-98, 108 S.Ct. at 1205, 99 L.Ed.2d at 458.
In Brogan v. Sullivan, 1992 WL 84778, 1992 U.S. Dist. LEXIS 4775 (S.D.N.Y. 1992), patients in the New York State Office of Mental Health facilities challenged New York State's practice of appointing the directors of mental health facilities as representative payees for the purpose of receiving Social Security disability benefits of inpatients and applying those benefits to pay the cost of the patient's institutional care. The plaintiffs argued that this practice violated their constitutional rights and provisions of State law. The case was decided on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c). The motion to dismiss was based on the ground that the Eleventh Amendment precluded the action, and with respect to the 42 U.S.C. § 1983 claims, on the ground that the defendants enjoyed qualified immunity. In that context, the court observed that the representative payees had discretionary authority to allocate Social Security benefits in any manner they deemed to be in the best interest of the patients, so long as their actions were not contrary to the guidelines. Id. 1992 WL 84778 at *3, 1992 U.S. Dist. LEXIS 4775 at *8. The court also observed that the guidelines expressly permitted the defendants to use the benefits in the manner in which they did, i.e., for plaintiff's institutional care. Id. Conceding that the usage might have been imprudent in light of the plaintiff's other needs for funds, the court observed that there was nothing in the regulations which prescribed a mandatory hierarchy among preferred uses. Id. The court concluded that, because the law did not clearly proscribe the actions of the defendants, the defense of qualified immunity barred the claims. Id.
In Fetterusso v. New York, 898 F.2d 322 (1990), the court was concerned with *308 whether a State statute was unconstitutional or violated 42 U.S.C. § 407. The statute imposed a duty on persons found not responsible by reason of mental disease to pay for their institutional care while exempting others. The patients' social security benefits were applied to current charges on a monthly basis. The court reviewed Philpott and other decisions holding that attachments and garnishments of Social Security funds were barred by § 407, but went on to state that the billing and payment procedures for current charges were not coercive or tantamount to legal process. Id. at 327. The court observed that "section 407(a) is violated when the State places itself in the position of a preferred creditor or coerces payment from protected benefits." Id.
In C.G.A., discussed previously, the court recognized that federal law permitted a State to act as representative payee and to use social security benefits for the cost of current maintenance in a mental care institution. 824 P.2d at 1369.

Section 407
Appellant contends that appellee, as representative payee, was barred by 42 U.S.C. § 407 from applying appellant's Social Security benefits to the Hospital's charge for current maintenance. Before proceeding to the merits, we address appellee's contention that the issue is not properly before us. In opening statement before the ALJ, appellant's counsel argued that Federal law prohibited the application of benefits because "benefits paid cannot be confiscated by legal process." This was clearly a reference to the substance of § 407 even though § 407 was not expressly mentioned. The evidence presented was relevant to that claim, even though it was also relevant to appellant's other claims. In our view, the issue is properly before us. See Giant Food, Inc. v. Department of Labor, Licensing & Regulation, 356 Md. 180, 205, 738 A.2d 856 (1999).
Appellant relies on Muller v. State, 179 Misc.2d 980, 686 N.Y.S.2d 652 (Ct.Cl.1999), aff'd, ___ A.D.2d ___, 719 N.Y.S.2d 916, 2001 N.Y.App. Div. LEXIS 1040 (2001) (without opinion). In Muller, the Court of Claims of New York was presented with a claim by a former patient of a psychiatric center against the director of the psychiatric center, the claimant's representative payee. In late 1990 and early 1991, the payee collected retroactive Social Security disability benefits owed claimant, and applied almost all of them to the cost of care previously provided at the psychiatric center where the claimant had been admitted in September, 1989. Claimant also asserted that from December 1990 on, the payee applied all but $35 of her monthly benefits to the cost of current care, leaving only $35 for her use as spending money.
The Court of Claims stated that the representative payee, by collecting benefits and paying them to his employer, made the State a preferred creditor, which was a violation of 42 U.S.C. § 407(a). Id. at 657. The court stated that the payee had a conflict of interest, that he should not have undertaken to act as representative payee, and that he breached his fiduciary duty in preferring the State over the claimant's interest. Id. The court also held, however, that the agent's authority under State law was limited to receiving and applying funds due or belonging to a patient in an amount not exceeding $5,000. Id. The court held that the State was liable for all funds received in its capacity as representative payee in excess of $5,000, excluding the monthly $35 allowance for personal necessities. Id. The court further found that the State was liable for any sums out of the initial $5,000 that could be shown to have been inappropriately *309 applied to charges for her care. Id.
We note that Muller v. New York is some authority for the proposition that § 407(a) is applicable to the case before us because the Court of Claims did not distinguish between past debts or current maintenance. In stating that the statute had been violated, the court presumably concluded that paying the cost of current maintenance was a violation. The statements with respect to Federal law, however, were unnecessary as the case was actually decided under a State statute.
Appellant also relies on Fetterusso. Three patients were involved in the Fetterusso case. The representative payee for one of them was the director of the psychiatric center, the representative payee for another was his brother, and the third had no representative payee. The court was called upon to determine, in part, whether a State statute that required individuals who were committed following a verdict of "not responsible by reason of mental disease or defect" to pay for their institutional care while exempting others "conflicts with the protection afforded social security benefits under 42 U.S.C. § 407 ... against `execution, levy, attachment, garnishment, or other legal process' in violation of the Constitution's Supremacy Clause." 898 F.2d at 323-24. The court acknowledged that § 407(a) is violated when the State places itself in the position of a preferred creditor or coerces payment from protected benefits. Id. at 328. The court stated that there was no evidence to support the claims that the defendant's billing procedures were coercive or tantamount to legal process, the latter including implied threats or sanctions. Id. The monthly benefits were used to pay current charges. Id. at 327-28. Appellant points out, however, that the court in Fetterusso stated there was no basis for concluding that any of the claimants had not voluntarily agreed to the use of their Social Security benefits to pay for the costs of their care and treatment. See id. at 328.
As indicated, "legal process" within the meaning of § 407(a) goes beyond traditional legal process. It may include coercion, threats, or providing inaccurate information to a social security beneficiary in order to obtain consent. See Moore v. Colautti, 483 F.Supp. 357, 368-69 (E.D.Pa.1979), aff'd, 633 F.2d 210 (3rd Cir.1980) (without opinion). On the other hand, the fact that a State as representative payee uses current benefits for current maintenance without threats, coercion, or misrepresentation does not involve "legal process." Otherwise, the federal regulations permitting a state to be representative payee and permitting it to reimburse itself for the cost of current maintenance would make no sense. See King v. Schafer, 940 F.2d 1182, 1185 (8th Cir.1991)(rejecting the argument that the appointment of a state as representative payee is the type of coercive legal process forbidden by § 407(a), and stating that "[w]e cannot believe Congress contemplated this result in enacting § 407(a), particularly when this result would be contrary to another provision of the Social Security Act: § 405(j), providing for the appointment of representative payees.").
We find instructive the Court of Appeals's decision in Conaway v. Social Services Admin., 298 Md. 639, 471 A.2d 1058 (1984). The issue in Conaway was whether the Baltimore City Department of Social Services could use federal benefits payable to a foster child to reimburse itself for the cost of past care. The director of the Department of Social Services was the representative payee. As social security benefits were received, they were deposited in a bank account. Pursuant to State regulations that provided that such benefits *310 could be conserved for the foster child to be used for the child's future education or vocational needs, they remained in the account. The law was subsequently changed to provide that if the child did not attend school after reaching 18, the balance in the account would be applied toward costs previously incurred for foster care. As a result, the claimant was advised that, because he had not continued in school, his conserved funds would revert to the agency to pay for the cost of foster care. After concluding that the action was permitted under State law, the Conaway Court turned its attention to 42 U.S.C. § 407. The Court stated:
We have not previously determined whether these provisions of federal law prohibit the State from using federal benefits that it has conserved to reimburse itself for past care. However, in State, Central Collection v. Stewart, 292 Md. 255, 438 A.2d 1311 (1981), this Court did consider whether the State could obtain a judgment against persons found not guilty of crimes by reason of insanity for the cost of care and treatment rendered in the State mental hospital to which they were committed. These patients received social security benefits and the State subsequently sought reimbursement. We concluded that 42 U.S.C. § 407, as construed in Philpott v. Essex County Welfare Board, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), precludes benefits from being subject to any type of legal process. However, in Stewart, the State had not attempted to reach any benefits. Instead, a judgment simply was entered against the patients. Even though at the time the patients' only source of income was the social security benefits, these benefits were not actually attached; therefore, we found no violation of § 407.
The instant action is quite different from Stewart because in this case benefits in fact were seized. Therefore, we must re-examine Philpott and its analysis of the requirements of § 407.
In Philpott, Wilkes applied to a New Jersey welfare agency for financial assistance. As a condition of receiving assistance, Wilkes was required to execute an agreement to reimburse the county welfare board for all payments received. Wilkes began receiving the State assistance by 1967 and was advised to apply for social security benefits. In 1968 Wilkes was awarded retroactive social security disability benefits in the amount of $1,864.20. The money was deposited in a bank account and the county welfare board sued to reach the bank account under the reimbursement agreement. The trial court held that the welfare board was barred by § 407 from recovering any amount from the account. The New Jersey Supreme Court reversed. In reversing that court, the U.S. Supreme Court stated that "[o]n its face, the Social Security Act in § 407 bars the State of New Jersey from reaching the federal disability payments paid to Wilkes." Id. at 415, 93 S.Ct. at 592.
298 Md. at 645-46, 471 A.2d 1058.
The Court continued:
The State stresses that DSS had a legal right to use the benefits to offset Conaway's costs of care and maintenance; thus the money in the trust account legally belongs to the agency. However, a similar argument was rejected by the Court in Philpott. There the State argued that if the amount of social security benefits received had been made monthly, the amount of State welfare benefits would have been reduced by the amount of the federal benefits. The State could have made such a reduction; *311 however, the Court saw "no reason to base an implied exemption from § 407 on that ground." Philpott, supra, 409 U.S. at 416, 93 S.Ct. at 592. Similarly, in this case, the State had the right to use current benefits for current costs of care. However, the State manifestly did not follow this course. Instead, it chose to conserve the benefits for Conaway. Once accumulated, the benefits took on the same character as those in Philpott; thus, that Court's conclusion also applies in this case: "We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor." Id. As the Supreme Court has made clear, a state agency has no authority to take lump sum federal benefits and use them for reimbursement for past care. The State had an obligation to provide for Conaway; it cannot now seek reimbursement from funds which it could have used, but chose not to.
Other provisions of federal law and regulations adopted pursuant thereto support our conclusion. As representative payee on behalf of Conaway, DSS had certain duties defined by regulation pursuant to 42 U.S.C. §§ 405 and 1302 (social security benefits) and 38 U.S.C. §§ 210 and 3202 (veterans' benefits). Although these regulations indicate that benefits may be used for the current needs of the beneficiary, the Social Security Administration Programs Operations Manual System § 00603.001 (1981) specifically provides that:
If a payee used his own funds for current support of the beneficiary and saves or invests the beneficiary's social security benefits, the payee ordinarily cannot later use those conserved benefits to reimburse himself for his prior support of the beneficiary. The beneficiary's right to a conservation of benefits may not be made contingent upon his special use of it. For example: A father conserves a child's social security benefits upon condition that she goes to college. Instead, she marries upon completion of high school. The conserved funds still belong to the child.
Id. at 648-49, 471 A.2d 1058 (footnote omitted).
The Conaway Court concluded that applying Maryland law under the facts of that case conflicted with federal law, and thus, the State regulation was pre-empted by 42 U.S.C. § 407. Id. at 649-50, 471 A.2d 1058.

State Law
Appellant contends that appellee violated State law by failing to investigate appellant's financial condition and expenses. In order to determine ability to pay for the cost of care of a recipient of services, appellee must investigate the financial condition of the recipient. See HG § 16-202(a)(1). The regulations provide that determination of a recipient's ability to pay requires conducting a financial investigation of the individual's income, assets, and expenses. COMAR § 10.04.02.03A. Appellant asserts that Mr. Varley did not conduct such an investigation but only determined that there were assets and then applied them. Appellant observes that the ALJ found that the burden was on appellant to request a reduction in charges, and acknowledges that neither appellant, his social worker, a member of his treatment team, nor anyone else, prior to February 2, 1996, requested an allowance for expenses after appellant's release.
Appellant points out, however, that appellee had been appointed representative payee, and as such, had a duty to act in appellant's best interests. Appellant observes *312 that, at the administrative hearing, a member of the treatment team testified that appellant would have expenses after release that would aid his recovery and that using the benefits solely to pay the current charges compromised his discharge plan. Appellant points to the fact that Maryland regulations provide for expenses associated with a "clinically sponsored activity." COMAR 10.04.02.03G(3)(d). Consequently, according to appellant, the Department violated State law in addition to Federal law.
First, and as noted, we do not read the regulation just cited as necessarily extending to the expenses involved in this case. The expenses in question do not pertain to care within the institution and, based on what we know, do not appear to relate to a clinically sponsored activity. Second, the State's policy is that persons committed to State mental health facilities must pay for the cost of their care if they are financially able to do so. HG § 16-102. The financial agent determines the extent to which a recipient of services has the ability to pay. HG § 16-202.
In recognition of an individual's ongoing financial needs, the Department shall consider a reduction in a recipient of services' billing by permitting the income allowances, asset exemptions, and allowable expenses indicated below. A billing reduction may not be permitted unless and until the recipient of services submits appropriate written documentation demonstrating his or her entitlement to the billing reduction.
COMAR 10.04.02.03(G). The regulations exempt certain assets, including liquid assets up to $2,500, and permit deductions for allowable expenses. COMAR 10.04.02.03(G)(1) and (3)(d).
The ALJ found that Mr. Varley had followed the statutory rate-setting procedure. Mr. Varley testified that he conducted a financial investigation of appellant, which included sending a questionnaire to appellant's father, and searching for any benefits, including Social Security benefits. He determined the amount of the Social Security benefits, and deducted the $2,500 exemption and $40 per month for personal needs. Following appellant's release, he recalculated the charges and refunded appellant an additional $1,347.25.

Conclusion
With respect to appellant's second argument, largely on the strength of Conaway, we conclude that the voluntary application of benefits by a representative payee to the cost of current maintenance is not a violation of § 407(a). If a permitted payment is not voluntarily made by a representative payee, a creditor, including the State, is prohibited by § 407(a) from enforcing its claim by legal process (including coercion, threats, and the like).
With respect to appellant's third argument, we conclude that there was substantial evidence to support the administrative determination that appellee was in compliance with State law.
Our conclusion with respect to appellant's first argument is that a representative payee does have a duty to expend Social Security benefits in the best interest of the beneficiary and does have discretion in fulfilling that duty. Contrary to appellant's assertion, we see nothing in the ALJ's opinion, adopted by appellee, that indicates a conclusion to the contrary. Rather, on the strength of 20 CFR §§ 404.2035 and 404.2040, the ALJ concluded that the representative payee fulfilled its duty by applying the benefits to appellant's charges for current maintenance, a federally approved expenditure. As stated earlier, such payment is expressly *313 permitted but not mandated by Federal law. The cases discussed herein are helpful but, for the most part, are not on point in that they do not involve the application of social security benefits to the costs of current maintenance by a State acting as representative payee when the issue is whether the funds should be conserved for future use. We find nothing in the Social Security Act or its regulations expressly establishing a preferred order of otherwise acceptable expenditures.
In the end, however, we are left with the conclusion that, under federal law, a representative payee has a duty to exercise discretion and, in fact, the Secretary did not exercise discretion. As a result, we shall reverse and remand so that the Secretary can exercise discretion and determine whether any or all of the funds applied to the cost of current maintenance should be refunded to appellant or applied to other charges.[4]
JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR HOWARD COUNTY WITH DIRECTIONS TO REMAND IT TO THE DEPARTMENT OF HEALTH & MENTAL HYGIENE FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.
NOTES
[1] Under federal law as it existed at the time, later amended, appellant qualified for Social Security disability payments because of disability due, at least in part, to drug and/or alcohol addiction.
[2] The reason for the termination was an amendment to Federal law, effective January 1, 1997, which prohibited disability payments to persons whose disability was materially contributed to by drug and/or alcohol addiction. See 42 U.S.C. § 423(d)(2)(c).
[3] We note there are many more State court decisions addressing social security benefits issues, including the application of § 407(a). See, e.g., Nebraska Dep't of Health & Human Servs. Fin. & Support v. Wilson, 259 Neb. 829, 613 N.W.2d 12 (2000); Park Hope Nursing Home, Inc. v. Eckelberger, 185 Misc.2d 617, 713 N.Y.S.2d 918 (N.Y.Sup.Ct.2000); E.W. v. Hall, 260 Kan. 99, 917 P.2d 854 (1996).
[4] We note that appellant and persons on his behalf presented evidence and arguments to appellee through the administrative process. There was no evidence that the funds available to appellant post-release were inadequate, and no evidence that appellant's release was delayed or his recovery hindered. Consequently, if the Secretary, as representative payee, had exercised discretion, we would not find an abuse of discretion on the record in this case.