OPINION OF THE COURT
James H. Ferreira, J.
On October 26, 1988, claimant was sentenced to a term of imprisonment of 8V2 to 251/2 years by the Ontario County Court (Hon. Frederic T. Henry, Jr.) following his plea of guilty to three counts of burglary in the second degree, three counts of sodomy in the first degree and one count each of petit larceny, attempted rape in the first degree, attempted sexual abuse in the first degree, burglary in the first degree, sexual abuse in the first degree, assault in the second degree and assault in the third degree. On October 24, 2005, when claimant was “nearing the end of [his] prison sentence[ ]” (State of N.Y. ex rel. Harkavy v Consilvio, 7 NY3d 607, 610 [2006]), the Superintendent of Mid-State Correctional Facility applied for the involuntary admission of claimant to the Manhattan Psychiatric Center (hereinafter MPC). The application included certifications from two Office of Mental Health physicians who conducted examinations of claimant. Claimant was admitted to MPC on October 27, 2005.
Thereafter, claimant and other similarly situated petitioners brought a habeas corpus proceeding in Supreme Court (see Harkavy v Consilvio at 610). Petitioners sought relief on the ground that “since they were undergoing a sentence of imprisonment, it was illegal for the State to transfer them into the mental health system pursuant to article 9 of the Mental Hygiene Law . . . [and] that the State was required to comply with the procedures set forth in Correction Law § 402” (id.). The court granted the petition and a conditional release order “unless a retention hearing was begun and concluded expeditiously” (id. at 611). “The Appellate Division reversed, on the law, vacated the order for conditional release and dismissed the petition” (id.).
The Court of Appeals disagreed with the Appellate Division and remitted the matters to Supreme Court for “immediate retention hearing[s]” (id. at 614). As a preliminary matter, the Court of Appeals “agree[d] with the courts below that prison *389 superintendents would have been proper persons to execute the applications for involuntary commitment” {id. at 611). The Court disagreed with the Appellate Division’s holding that “proceeding under the Mental Hygiene Law was proper, since petitioners were still prison inmates and therefore subject to the provisions of the Correction Law at the time the applications were initiated” {id.). However, since petitioners were “no longer serving a prison sentence,” the Court ordered that they “be afforded an immediate retention hearing pursuant to article 9 of the Mental Hygiene Law,” but made clear that “[a]s to future candidates for immediate psychiatric hospitalization, prior to the expiration of a term of imprisonment, the State must proceed pursuant to Correction Law § 402” {id.).
On July 16, 2007, claimant was released from MFC. On October 10, 2007, claimant personally served his notice of intention to file a claim upon the Attorney General. On October 25, 2007, claimant personally served a copy of his claim upon the Attorney General and filed his claim with the court. On that same day, claimant also filed a motion with the court seeking permission to file a late claim and to change the venue of this matter to the Rochester district of the Court of Claims. Claimant asserts various causes of action in the claim including, but not limited to, wrongful confinement at MFC, wrongful public disclosure of private facts, libel, intentional and negligent infliction of emotional distress, negligent hiring and/or supervision, medical/psychiatric malpractice and violation of civil rights. Defendant served a verified answer upon claimant on January 17, 2008 and filed its verified answer with the court on January 18, 2008. According to defendant, claimant rejected service of the answer on January 23, 2008. Defendant opposes the application to file a late claim and the request to change venue, and cross-moves the court for an order compelling claimant to accept service of its answer.
Court of Claims Act § 10 (5) provides that “[i]f the claimant shall be under legal disability, the claim may be presented within two years after such disability is removed.” Thus, a person under a legal disability is not required to serve a notice of intention to file a claim.
In Boland v State of New York (30 NY2d 337, 339 [1972]), claimant was “a recent patient of a State mental institution by involuntary commitment, seek[ing] permission to file a late claim against the State ... for wrongful confinement . . . and negligent medical treatment.” The Court held that “while *390 claimant was under the supervision of the State hospital . . . [she] was under a continuing legal disability during that period [and] is entitled to serve her claim within two years of final discharge as of right” pursuant to Court of Claims Act § 10 (5) (id. at 343). In so holding, the Court relied, in relevant part, upon the Carmody-Wait treatise on the subject:
“ ‘The state having presented no proof to the contrary, the claimant’s confinement on a commitment to a state hospital by order of the Supreme Court must be accepted as evidence of legal disability during the period of his confinement. That is to say, the fact of commitment to a state hospital, which is based upon the character of the finding required by statute for admission as a patient, is sufficient to overcome the presumption of a claimant’s competency’ ” (id. at 342, quoting 19 Carmody-Wait 2d, at 748).
The Court went on to hold that “[i]n such a case, permission to file a claim is not necessary to validate a filing made within the two-year period after the removal of the disability” (id. at 343).
Thereafter, in Bowles v State of New York (208 AD2d 440, 442 [1994]), the relevant issue before the Court was whether “claimant suffered a ‘legal disability’ sufficient to toll the Statute of Limitations.” Distinguishing Court of Claims Act § 10 (5) from CPLR 208, the Court observed that the former “provides a toll for ‘legal disability’ while” the latter “affords an insanity toll to ‘individuals who are unable to protect their legal rights because of an over-all inability to function in society’ ” (id.). The Court stated that “[although the Legislature intended the tolling provision to be narrowly interpreted, the surrounding facts and circumstances relevant to the claimant’s ability to safeguard his or her legal rights must be considered” (id. [citations omitted]). Applying the foregoing principles, the Court concluded that “[t]he claimant’s psychiatric records, in addition to his confinement to a secure facility for a ‘dangerous mental disorder’, demonstrate that he was unable to protect his legal rights” (id.).
Further, in Muller v State of New York (179 Misc 2d 980, 987 [1999]), the Court of Claims (Lane, J.) determined, in relevant part, that claimant was under a legal disability “given her status as an inpatient of a State psychiatric hospital” and, therefore, “the time limitation for filing a claim is tolled for a period of two years following removal of the disability.” Unlike the Court in Bowles (supra), there is no indication from the court’s deci *391 sion in Muller that claimant was required to demonstrate, through an offer of medical proof, that she was unable to protect her legal rights while confined to the psychiatric hospital.
Here, the conundrum presented is obvious. Requiring claimant to establish, through an offer of medical proof, that he was unable to protect his legal rights while confined at MFC in order to receive the benefit of Court of Claims Act § 10 (5) would necessarily run afoul of the sine qua non of his claim — that he was wrongfully confined at MFC because he never suffered from any psychiatric condition. Thus, the court opts to follow the rationale employed by the Court of Appeals in Boland (at 342), and holds that claimant’s undisputed confinement at MFC is sufficient to overcome the presumption of competency for purposes of Court of Claims Act § 10 (5). Thus, claimant need not seek permission to file a late claim, but rather his claim, filed with the court more than three months following his release from MFC, is timely.
In light of the foregoing, and pursuant to CPLR 3012 (d), defendant shall be permitted an extension of time to serve its verified answer, and must do so within 20 days from the date of filing of the court’s decision. Additionally, the court finds that claimant has failed to set forth sufficient proof to warrant a change of venue of this matter from Albany to Rochester (see CPLR 510). Although claimant resides in the Rochester area, he has failed to “support the application with detailed relevant information establishing that the convenience of the nonparty witnesses would be enhanced by the change” (Manchester Tech. v Hansen, 6 AD3d 806, 807 [2004], quoting Singh v Catamount Dev. Corp., 306 AD2d 738, 738 [2003]).
Accordingly, it is hereby ordered that M-74227 is denied; and it is further ordered that M-74612 is granted.