NOT DESIGNATED FOR PUBLICATION

No. 119,944

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the
Adoption of T.M.M.H.

MEMORANDUM OPINION

Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Opinion filed January 10, 2020.
Affirmed.

*Scott C. Nehrbass* and *James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, and *Joseph W. Booth*, of Lenexa, for appellant.

*Suzanne Valdez*, of Smith Legal, LLC, of Lawrence, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

PER CURIAM: In this adoption case, the district court found a grandmother had no standing to intervene in the process when her grandson, T.M.M.H., was being adopted by his stepfather. The Kansas Court of Appeals and the Kansas Supreme Court both affirmed that decision, and it became final. Grandmother nevertheless tried to intervene again in the same adoption proceedings, relying on new motions, a new theory, and different evidence. But Grandmother had already litigated the issue to its conclusion. We find that Grandmother's appeal in these adoption proceedings is barred by the law of the case doctrine.

1

*Factual and Procedural Background*

Because this is Grandmother's second appeal in this adoption case, we adopt our outline of underlying facts from Grandmother's first appeal:

"T.M.M.H. is a minor child born in November 2006. His father passed away in 2007 and his natural mother (Mother) later remarried. Stepfather desired to adopt the child and filed a petition for adoption. Mother consented to the adoption. Thereafter, the district court ordered notice for a hearing to 'all interested parties, including but not limited to [Paternal Grandmother, L.C. (Grandmother)].' Grandmother contested the stepparent adoption, asked the district court to dismiss the petition for adoption, and moved to compel depositions. Stepfather objected to the motion, arguing Grandmother lacked standing to challenge the stepparent adoption or to conduct discovery.

"Grandmother asserted that she had standing to do so because in a separate case, Case No. 08CV3344, which had begun by her exercise of her statutory grandparent visitation rights, she had obtained a joint custody agreement and order between herself and Mother. Because she had legal joint custody of the child, she argued she had standing to conduct depositions, participate in the adoption proceeding, and prevent Stepfather's adoption absent her consent.

"The district court denied Grandmother's motion to compel depositions and held that Grandmother lacked standing to contest the adoption, but had standing to receive notice of the adoption proceeding. Grandmother filed a timely notice of appeal. She and Stepfather have filed briefs, yet the Mother and the child's Guardian Ad Litem (GAL) have not. We note that it is the role of the GAL to represent the best interests of the child, and that Grandmother cannot assert arguments on behalf of the child in this appeal.

"Because Grandmother appealed before the adoption action was completed, we issued a show cause order questioning the finality of the district court's decision. After reviewing the parties' responses, we retained the appeal and ordered the parties to brief the jurisdictional issue for the panel. Grandmother then filed an urgent motion for temporary order pursuant to K.S.A. 2015 Supp. 59–2401a(c) asking us to stay the adoption hearing. We partially granted that motion, declining to stay the adoption hearing but granting a temporary stay of the order arising from the hearing, pending completion of this appeal.

"Neither Grandmother nor her counsel appeared at the adoption hearing, although she had been provided notice. The district court concluded the adoption proceedings but for entering its final order, apparently awaiting this court's determination of the issues on appeal." *In re Adoption of T.M.M.H.*, No. 115,309, 2016 WL 7032112, at *1 (Kan. App. 2016) (unpublished opinion), *aff'd* 307 Kan. 902, 416 P.3d 999 (2018).

On Grandmother's first appeal, a panel of this court held that Grandmother had no standing to contest her grandson's adoption by his stepfather. 2016 WL 7032112, at *2-8. In its decision, the panel also addressed Grandmother's argument that she had been granted joint legal custody through written agreements entered into between Mother and Grandmother. However, because the record lacked the alleged "co-parenting agreements," the panel found Grandmother's argument lacked support. Still, the panel found that even if Grandmother had established that the agreements granted her joint legal custody of T.M.M.H., her rights would be subordinate to the fit Mother's fundamental rights to care for and to parent her child. 2016 WL 7032112, at *6-8. Grandmother petitioned for review of our decision, and the Kansas Supreme Court granted it.

*The Kansas Supreme Court Decision*

In a split decision, our Supreme Court affirmed the finding that Grandmother lacked standing to participate in the adoption proceeding. Its ruling addressed only whether Grandmother had established that she was an interested party under the Kansas Adoption and Relinquishment Act (KARA) or the Probate Code. It did not reach the merits of Grandmother's claims that she was a parent by virtue of the parenting agreements, or by virtue of the orders a different judge had entered in Grandmother's visitation or parentage cases, or because she was a de facto or psychological parent. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 920, 416 P.3d 999 (2018). Those issues are raised in Grandmother's separate cases—her visitation and parentage cases—currently on appeal. See *In re L.C.*, No. 120,072, 120,073 (unpublished opinion, this day decided).

3

Our Supreme Court determined that Grandmother could establish standing in the adoption case in one of three ways: being an interested party under K.S.A. 2016 Supp. 59-2401a(e)(1); being the petitioner in the case on appeal, K.S.A. 2016 Supp. 59-2401a(e)(7); or being "any other person granted interested party status by the court from which the appeal is being taken." K.S.A. 2016 Supp. 59-2401a(e)(8). It found three categories of interested party listed in K.S.A. 2016 Supp. 59-2401a(e)—a parent, the petitioner, and a person designated by the district court as an interested party. Our Supreme Court examined all three and found no Grandmother standing.

The court first found that Grandmother's status as a joint legal custodian made no difference.

> "Notably, this statute does not include grandparents or legal custodians in the definition of 'interested parties.' Cf. *In re D.D.P., Jr*., 249 Kan. 529, 542, 819 P.2d 1212 (1991) ('If the grandfather has standing to appeal [in this child-in-need-of-care proceeding], then he must have been designated an "interested party."'). As a result, we need not consider three of the four issues presented in Grandmother's Court of Appeals brief because they relate specifically to Grandmother's status as joint legal custodian." *In re Adoption of T.M.M.H.*, 307 Kan. at 911.

It then determined that Stepfather and not Grandmother was the petitioner and that Grandmother had not been granted interested party status. Although the district court had initially granted Grandmother interested party status by giving her notice of the adoption proceeding, the court ultimately denied Grandmother interested party status. 307 Kan. at 911-12. Our Supreme Court held:

> "[Grandmother] argues the district court erred in denying her that status. Thus, as the issue is presented to us, Grandmother's standing to appeal cannot stand on her designation as an interested party. Although this may appear harsh or unfair because it leaves someone who believes the district court erred when denying interested party status

4

without an appellate remedy, no arguments have been presented suggesting we must interpret the statute in some way other than its plain language." 307 Kan. at 912.

Our Supreme Court then examined the third category of "parent" and Grandmother's arguments as to why she should be considered a parent. Grandmother argued she had statutory standing as a parent because of the court orders in her visitation case, because of her parenting agreements with Mother, or because of her de facto parenting relationship with T.M.M.H.

> "Grandmother argues *Frazier* and *In re Marriage of Nelson* support her argument that she can be a grandparent and, through agreements with Mother and orders of the grandparent visitation court, also be legally and emotionally a co-parent. And before the district court in her verified brief she asserted T.M.M.H. had spent '90% of his young life with [her] as primary caregiver.' She also explained she had provided all financial support during the time the mother had 'surrendered custody.' She further asserted 'the general class of "parent" includes [her] as a permanent legal custodian.'" 307 Kan. at 914.

But the Kansas Supreme Court found that Grandmother failed to establish standing as a parent by virtue of any parenting agreements or court orders. Grandmother did not offer any of the three agreements between her and Mother. Instead, she offered only a "Journal Entry and Order" from her grandparent visitation case that decreed Mother and Grandmother had "joint legal custody" of the child. Our Supreme Court found that insufficient to establish standing, especially since no evidence showed Mother had waived her parental preference:

> "The Journal Entry and Order, however, does not address whether Mother made a knowing, intelligent, and voluntary waiver of her parental preference—a point Grandmother must establish in order to advance her theory that Mother waived her parental preference and granted parental status to Grandmother, thereby conferring a basis for standing. See *Frazier*, 296 Kan. at 751 (to give effect to a natural mother's waiver of parental preference in favor of a third party, the waiver must be made

5

knowingly, intelligently, and voluntarily). And Grandmother's own verified statements do not assert that Mother voluntarily and knowingly waived her parental preference. Even at the most minimal level of persuasion, a party with the burden of establishing standing must make a prima facie argument. *Lujan*, 504 U.S. at 561. Grandmother has failed to do so." 307 Kan. at 916.

Our Supreme Court then addressed Grandmother's argument that her de facto parental status created an emotional bond that gave her standing as a psychological parent to protect the best interests of the child. It found "[t]he issue of her standing as a psychological parent was not preserved for this court's review." 307 Kan. at 918. It found that Grandmother had not asked the district court to make any findings related to that issue, nor had she presented that issue to the Court of Appeals:

"Grandmother attempts to uncouple her status as an alleged psychological parent from her arguments about the parenting agreements and court orders. This creates a new issue of first impression, which she had not presented to the Court of Appeals, or, at least, was not decided by the Court of Appeals." 307 Kan. at 919.

Our Supreme Court concluded:

"As a result of all these procedural failures, Grandmother has achieved the trifecta of reasons an issue is not preserved for this court's review: She failed to preserve various issues relating to statutory standing at the district court, the Court of Appeals, and before this court. Because of Grandmother's failure to meet the statutory prong of the standing test, we need not discuss her arguments about common-law standing." 307 Kan. at 919.

Our Supreme Court's bottom line was that Grandmother failed to establish interested party status under the Kansas Adoption and Relinquishment Act (KARA) and the Probate Code. Three justices formed the majority, so finding, and Justice Stegall concurred in that result. Three other justices dissented. A majority of the Court thus agreed that

6

Grandmother lacked standing in the adoption proceedings. The Court concluded: "judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed." 307 Kan. at 1011. No remand was ordered.

*District Court Proceedings After the Kansas Supreme Court Decision*

The adoption proceedings in the district court—stayed pending resolution of the issues on appeal—proceeded to conclusion after the Kansas Supreme Court's ruling. Shortly after that decision, Grandmother filed several motions. She filed a new action, petitioning for a determination of parentage, then again moved to intervene as an interested party in these adoption proceedings, relying on a new theory. She based her new theory on the district court's denial in November 2017 of Mother's motion to dismiss Grandmother's grandparent visitation case for lack of subject matter jurisdiction. In that visitation case, the district court likened Grandmother's status to that of a parent:

> "While this court has not expressly used that term of 'parental rights,' but rather often used terms like 'access' when it spoke of [Grandmother's] status in this case, the avoidance of the term parental rights was in an effort to clarify that [Mother] retains her rights as mother. But [Grandmother's] status is different from that of [a] Grandmother because of the agreements the parties have entered into. [Grandmother] holds an equitable status that is parental in nature."

From the statement in her visitation case that "her equitable status that is parental in nature," Grandmother argued that she had a new claim as T.M.M.H.'s parent to intervene in this adoption proceeding. Grandmother also argued that because Mother had moved for relief from the November 2017 decision in the grandparent visitation case, that motion gave Grandmother an additional basis to make her second intervention request.

But the district court denied Grandmother's second motion to intervene and approved the stepparent adoption. The decree of adoption was filed on July 19, 2018, and

no party appealed it. It thus became final 30 days later. See K.S.A. 2018 Supp. 60-2103(a).

After the district court denied her motion to intervene in this adoption case, Grandmother moved for reconsideration under K.S.A. 2018 Supp. 60-260(b). Grandmother argued that the district court violated Kansas Supreme Court Rule 133(c) (2019 Kan. S. Ct. R. 204) by canceling a status conference and ruling on Grandmother's motion to intervene without hearing arguments. Grandmother argued that our Supreme Court's decision was split on the issue of whether she had standing to intervene. She asserted that the district court's decision needed to make clear that its ruling was not intended to have any impact on Grandmother's parental status and custodial rights in her parentage case. Finally, Grandmother listed additional findings of fact and conclusions of law she wanted the district court to make. The district court denied Grandmother's motion.

After the district court approved the adoption, Grandmother moved our Supreme Court to recall its mandate in this case, issued after her previous appeal of the denial of her motion to intervene. Our Supreme Court summarily denied that motion.

Grandmother again attempts to appeal the judgments against her, including the district court's decree of adoption, its amended order denying her petition to intervene, and its order denying her motion to reconsider.

*The Law of the Case Doctrine Bars Grandmother's Arguments*

We first address the law of the case doctrine—a doctrine properly raised by the Court of Appeals sua sponte. *State v. Parry*, 305 Kan. 1189, Syl. ¶ 1, 390 P.3d 879 (2017). Both parties addressed this matter during oral arguments. "Under the law of the

8

case doctrine, when a second appeal is brought in the same case, the first decision is the settled law of the case on all questions involved in the first appeal, and reconsideration will not normally be given to such questions." *State v. Kleypas*, 305 Kan. 224, Syl. ¶ 2, 382 P.3d 373 (2016). We apply this doctrine to Grandmother's second appeal in this same case, following our Supreme Court's decision in her first appeal that she has no right to intervene in these adoption proceedings.

The law of the case doctrine prevents serial litigation of issues, promotes judicial efficiency, and precludes litigants from getting a second bite at the same apple:

"The doctrine of law of the case prevents a party from serially litigating an issue already presented and decided on appeal in the same proceeding. The doctrine promotes judicial efficiency while allowing litigants a full and fair opportunity to present their arguments on a point—the first bite of the proverbial apple." *State v. Parry*, 51 Kan. App. 2d 928, 358 P.3d 101 (2015).

The doctrine is a discretionary policy designed in part to affirm the practice of refusing to reopen a matter already decided:

"The doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so. This rule of practice promotes the finality and efficiency of the judicial process. The law of the case is applied to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts." *State v. Collier*, 263 Kan. 629, Syl. ¶ 2, 952 P.2d 1326 (1998).

When the Kansas Supreme Court affirmed the district court's denial of Grandmother's motion to intervene in the adoption proceedings, it neither remanded the

9

case nor indicated that further proceedings relating to Grandmother were contemplated or necessary. In fact, the Kansas Supreme Court's decision held that Grandmother lacked standing, thus she could not participate in the adoption proceedings in the district court. "A district court's judgment becomes final the date this court issues its mandate, except in cases where remand instructions are given and further proceedings are necessary." *State v. Phillips*, 309 Kan. 475, 478, 437 P.3d 961 (2019); K.S.A. 60-2106(c). Although Grandmother moved to recall the mandate, our Supreme Court denied that request. Thus, the district court's decision denying Grandmother's motion to intervene became final on June 8, 2018—the date our Supreme Court issued its mandate. "The term 'final decision' is self-defining and refers to an order that definitely terminates a right or liability involved in an action or that grants or refuses a remedy as a terminal act in the case." *Kaelter v. Sokol*, 301 Kan. 247, 250, 340 P.3d 1210 (2015).

That Kansas Supreme Court decision denying intervention was final, as no party sought certiorari. In Kansas, generally only an aggrieved party or one permitted to intervene may appeal a judgment. *Blank v. Chawla*, 234 Kan. 975, 978, 678 P.2d 162 (1984); K.S.A. 2018 Supp. 60-2103.

> "Moreover, it is a well-established rule that where a court has jurisdiction of the parties to an action and of the subject matter thereof and renders a judgment within its competency, such judgment is final and conclusive, unless corrected or modified on appeal. *McFadden v. McFadden*, 187 Kan. 398, 402, 357 P.2d 751 (1960). It is further a fundamental rule that where a court of competent jurisdiction renders a judgment within its competency, even if erroneous, that judgment is final and conclusive unless corrected or modified on appeal, and it may not be attacked collaterally. *In re Estate of Johnson*, 180 Kan. 740, 308 P.2d 100 (1957)." *Wirt v. Esrey*, 233 Kan. 300, 308, 662 P.2d 1238 (1983).

The district court's judgment that Grandmother cannot intervene in the adoption proceedings is final and conclusive, since it was not corrected or modified on appeal. Grandmother, a non-party, is launching a prohibited collateral attack on the judgment.

Grandmother has already received appellate review by the Court of Appeals and by our Supreme Court of her assertion that she should have been allowed to intervene in this stepparent adoption case. See generally *In re Adoption of T.M.M.H.*, 2016 WL 7032112; 307 Kan. 902. In fact, our prior decision underscored the importance of this issue:

> "Third, Grandmother must appeal the district court's decision now because interested party status is a prerequisite to appeal a final judgment in adoption proceedings. See *T.S.W.*, 294 Kan. at 432 (finding the KARA falls within the Kansas Probate Code, and permitting an appeal by an interested party); K.S.A. 2015 Supp. 59-2401a(b) (providing only interested parties may appeal from a final order in a KARA proceeding); K.S.A. 2015 Supp. 59-2401a(e) (defining an 'interested party' as: '[1] The parent in a proceeding pursuant to [KARA] . . . ; and [8] any other person granted interested party status by the court from which the appeal is being taken'). Thus the challenged order is effectively unreviewable on appeal from the final judgment in the adoption proceeding. Accordingly, we find that pursuant to the collateral order doctrine we have jurisdiction over Grandmother's appeal of the order that she lacked standing to participate in the adoption proceedings or to contest the adoption by Stepfather." *In re Adoption of T.M.M.H.*, 2016 WL 7032112, at *3.

"[O]nce an issue is decided by the [appellate] court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice." *Collier*, 263 Kan. 629, Syl. ¶ 3. Yet Grandmother does not argue and has not shown that the Kansas Supreme Court's holding in her prior appeal of this same issue was clearly erroneous, or that manifest injustice would occur if the panel refuses to reconsider her already appealed and decided issue.

11

Instead, Grandmother raises a new theory and presents different evidence. But she could have presented her new theory and her evidence in 2015 when she moved to intervene in the adoption proceedings the first time. After all, the evidence she relies on consists of written agreements between her and Mother from 2008 and 2010, and her new theory that she is a parent stems from a case decided in 2013—*Frazier v. Goudschaal*, 296 Kan. 730, 295 P.3d 542 (2013). The equities do not weigh in her favor.

Grandmother cannot settle the law of her case piecemeal before an appellate court any more than she may settle the facts that way in a trial before the district court.

> "Courts adhere to the law of the case 'to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts. [Citation omitted.]' *Collier*, 263 Kan. at 631. These purposes have long been part of our state's judicial fabric. See *Headley v. Challiss*, 15 Kan. 602, 607 (1875) ('A party may not settle the law of his case by piecemeal before this court, any more than he may settle the facts in that way before the district court. When the case is tried, he must be prepared to present his entire claim, or his entire defense.')." *Parry*, 305 Kan. at 1194-95.

Accordingly, Grandmother's arguments are barred by the law of the case doctrine.

Were Grandmother's arguments not barred by that doctrine, our review of the entire record firmly convinces us that she would still not be entitled to relief. But we decline to set forth our legal reasoning for that conclusion, as to do so would grant Grandmother the second bite at the proverbial apple that the law of the case doctrine forbids.

Affirmed.

12